The STATE OF IDAHO, Plaintiff,

v.

HOWMET TURBINE COMPONENT CORPORATION, Hanna Mining Company, Noranda Mines Limited, a Delaware corporation, Noranda Exploration, Inc., a Delaware corporation, and John Does 1 to 100, Defendants.

Civ. No. 83–4179.

United States District Court, D. Idaho.

Jan. 30, 1986.

John J. Hockberger, Jr., Patrick J. Kole, Cheryl P. Koshuta, Deputy Attys. Gen., Div. of Environment, Dept. of Health & Welfare, State of Idaho, Cline J. Strong, Chief, Natural Resources Div., State of Idaho, Boise, Idaho, for plaintiff.

Robert Monte MacConnell, Boise, Idaho, Anthony O. Garvin, Robert R. Klotz, Deborah Schmall, Amy B. Slater, San Francisco, Cal., for Noranda Exploration and Noranda Min.

H. Edward Dunkelberger, Theodore L. Garrett, Steven J. Rosenbaum, Washington, D.C., Carl P. Burke, Boise, Idaho, for Howmet Turbine Components.

Gary D. Babbitt, Don A. Olowinski, Boise, Idaho, Wesley F. Merrill, Kim B. Loveland, Pocatello, Idaho, for Hanna Min. Co.

## MEMORANDUM DECISION

CALLISTER, Chief Judge.

Before the Court are the motions to dismiss and for summary judgment of defendants Hanna Mining Company, Noranda Mines Limited, and Noranda Exploration, Inc. Counsel presented oral argument on these matters in a hearing held January 17, 1986. The Court has reviewed the memoranda filed by the parties as well as all other materials on file in the case.

This is an environmental law action brought for injunctive and monetary relief by the State of Idaho against Hanna Mining Company (Hanna), Noranda Mines Limited and Noranda Exploration, Inc. (collectively, Noranda), Howmet Turbine Component Corporation (Howmet) and John Does 1 to 100. Defendant Howmet has now been voluntarily dismissed from the action by the plaintiff. Jurisdiction is based on federal question and pendent jurisdiction.

In its complaint, plaintiff alleges that the defendants disposed of large quantities of mining wastes and hazardous chemical wastes in and around five creek drainages located in Lemhi County approximately 21 miles west of Salmon, Idaho. Plaintiff alleges that these wastes have all been produced from the operation of the Blackbird Mine, beginning about 1917. Plaintiff alleges that these wastes have contaminated ground and surface waters and have damaged aquatic life and wildlife in the area. The complaint alleges that the harmful effects of the waste disposal began to evidence themselves in the 1950's and continue to the present date.

Plaintiff's complaint contains four causes of action:

1. Strict liability under 42 U.S.C. § 9601 et seq., part of the so-called "Superfund Act" known officially as the "Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA).

2. Strict liability under the common-law theory of abnormally dangerous activity.

3. Nuisance—negligent creation of a continuing public nuisance.

4. Nuisance—negligent maintenance of a continuing public nuisance.

The parties have submitted statements of undisputed facts along with their motions for summary judgment from which the Court has sifted out the following undisputed facts.

The Blackbird Mining District is located in east central Idaho approximately 21 miles west of Salmon, Idaho. The Blackbird Mine, initially discovered in 1893, was the principal mine in the district. Cobalt and copper sulfides were mined and milled by various companies at the Blackbird Mine from 1917 to 1967, with the main period of extraction from 1949 to 1967. Since 1967 little or no commercial mining operations have been conducted at the mine, although the defendants. have run two small pilot programs to test the feasibility of reopening mining operations. These pilot programs were implemented long after the main period of commercial mining operations ceased in 1967.

Blackbird Mine has been mined by both underground and open pit mining. The open pit mining that occurred in the late 1950's left a 10.3 acre unreclaimed pit and approximately 3.8 million tons of waste rock deposited on 45.8 acres in the headwaters of the Blackbird and Bucktail Creeks. The underground mine has resulted in the development of at least 10 miles of underground workings. Approximately one million tons of waste rock have been removed from the underground workings and deposited in the drainage of Blackbird, Meadow and Bucktail Creeks.

Between the 1890's and 1967, ore tailings were disposed of throughout the Blackbird Creek Drainage system. During the early

period of operation, the tailings were deposited directly into Blackbird Creek for disposal. In 1950, a tailings dam was constructed to collect the tailings which washed downstream. This dam currently contains approximately 2 million tons of tailings. In 1967, defendant Hanna, through a subsidiary company, acquired the Blackbird Mine and/or surrounding properties in the Blackbird Mining District. Hanna maintained only minimum crews at the mine and conducted no commercial mining activities.

Defendant Noranda Exploration, Inc., conducted limited exploration activities at the Blackbird Mine between 1978 and 1982. In August 1980, Hanna transferred its Blackbird properties to the Blackbird Mining Company, a limited partnership composed of defendant Hanna as the limited partner, and defendant Noranda as the general partner.

Defendant Noranda conducted limited mining activities at the Blackbird Mine between December 1979 and May 1982 as a general partner of the Blackbird Mining Co. During this period, Noranda removed approximately 2500 tons of ore from the mine as part of a pilot project to determine the feasibility of full-scale operation of the mine.

On September 25, 1980, Noranda and the State of Idaho entered into a stipulation for entry of compliance schedule order regarding operation of the Blackbird Mine. On that same date, the United States Environmental Protection Agency (EPA) issued a National Pollution Discharge Elimination System (NPDES) permit to Noranda regarding the Blackbird Mine. The State of Idaho certified to the EPA pursuant to § 401 of the Federal Water Pollution Control Act that issuance of the NPDES permit to Noranda was in compliance with Idaho water quality standards.

In accordance with the compliance order and NPDES permit, defendant Noranda constructed a waste water treatment plant at the Blackbird Mine to treat mine drainage from the mine at a capital cost of approximately $1.5 million. The waste water treatment plant was completed in November 1980 and has been operated since that date in compliance with standards established by the NPDES permit. The total cost of all environmental work by Noranda mining is approximately $3 million.

Noranda's plan for a pilot mining program was approved by the United States Forest Service on September 8, 1980. The Environmental Assessment prepared by the U.S. Forest Service stated that the pilot program would have no significant impact upon the environment. Following issuance of its decision notice, the Forest Service issued a use permit to Noranda for use of Forest Service lands. The Forest Service also approved Noranda's proposal for full-scale operation of a 1200-ton per day operation in February 1982, after issuance of a final Environmental Impact Statement. This Environmental Impact Statement identified that past mining practices had had an adverse effect upon fisheries and natural resources in the Panther Creek drainage and that Noranda would not be required to correct past damages to natural resources.

Noranda ceased all mining operations at the Blackbird Mine in 1981 and ceased all underground activities in May 1982 at the completion of the pilot program and prior to the initiation of any full-scale operation of the mine. No further activities have been conducted at the mine by defendants. Noranda has continued to maintain and operate the wastewater treatment plant for collection and treatment of drainage since that time in compliance with the standards established in the NPDES permit issued by the EPA. Following closure of the mine, all employees of Noranda were terminated with the exception of a caretaker crew of three individuals. Discharges of pollutants continue on the properties owned by the defendants.

On September 28, 1984, the EPA reissued a second NPDES permit to Noranda for the Blackbird Mine which established treatment requirements during the period that the mine is closed.

The Idaho Department of Health and Welfare and Idaho Department of Fish and

Game have been involved in the regulation and monitoring of water quality from the Blackbird Mine for several decades.

CERCLA was enacted December 11, 1980. This suit was filed December 12, 1983. Notices of claims were *mailed* to the defendants on December 12, 1985.

The defendants' motions raise the following issues:

1. Does the three-year statute of limitations in § 112(d) of CERCLA, 42 U.S.C. § 9612(d), bar this action?

2. Did the State's failure to present a notice of claim sixty days before the commencement of this action preclude this suit under CERCLA § 112(a), 42 U.S.C. § 9612(a)?

3. Were the discharges of wastes in the present case federally-permitted releases within the meaning of CERCLA, i.e., were they authorized by federal and/or state permits?

4. Did the environmental impact statement identify the alleged damages to natural resources as irreversible and irretrievable commitments of natural resources under CERCLA?

5. Are mining wastes excluded from coverage of CERCLA?

6. Are the state causes of action barred by the four-year statute of limitations contained in Idaho Code § 5–224?

7. Are nuisance actions for the protection of water quality pre-empted by the Idaho Environmental Protection Act?

## CERCLA THREE–YEAR STATUTE OF LIMITATIONS

■ The Court agrees with the plaintiffs that this action is not barred by the three-year statute of limitations contained in § 112(d) of CERCLA, 42 U.S.C. § 9612(d). Section 112(d) states:

No claim may be presented, nor may an action be commenced for damages under this title, unless that claim is presented or the action commenced within three years from the date of the discovery of the loss *or* the date of the enactment of this act [enacted of December 11, 1980], whichever is later.

(emphasis added).

It is undisputed that the State discovered the harm involved here well over three years ago, so it must rely on having commenced its action within three years from the enactment of CERCLA, that date being December 11, 1980.[1] Plaintiff's complaint was filed December 12, 1983—one day beyond the limitations period, but December 11, 1983, fell on a Sunday. Thus, the dispute is whether the one-day late filing of this action was timely. The Court is of the opinion that under Fed.R.Civ.P. 6(a) the filing was timely because the last day of the limitations period fell on a Sunday. Rule 6(a) states:

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday.

There is a split of authority among the federal circuit and district courts as to whether Rule 6(a) can extend a federal statute of limitations. The majority view, according to Wright & Miller's treatise, is that Rule 6(a) does apply to federal statutes of limitation and that in this situation the filing was not time-barred. 4 A. WRIGHT and C. MILLER, *Federal Practice and Procedure* § 1163 at pp. 614–16 (1969 and 1985 supp.). In addition, giving Rule 6(a) broad application leads to uniformity in computation of time under all federal statutes and rules, a desirable objective.

---

1. The Court notes also that it would have been sufficient if the State had made a "claim" to the defendants within three years of the enactment of CERCLA; the State failed to do so, however.

## CERCLA SIXTY–DAY NOTICE OF CLAIM REQUIREMENT

The applicable provision of CERCLA here is § 112(a), 42 U.S.C. § 9612(a), which reads:

*All claims which may be asserted against the fund pursuant to Section 9611 of this title shall be presented in the first instance to the owner, operator,* or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under § 9607 of this title. *In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator,* guarantor or other person *or to present a claim to the fund for payment.*

(emphasis added).

The State of Idaho concedes that the sixty-day notice was not given in this case, its notice of claim being *mailed* to the defendants the same day this action was filed. The issue before the Court is the legal effect of this failure to give the notice of claim.

After diligent search, the Court is unable to find (and counsel have not cited) any federal appellate decisions dealing with the notice of claim provision in § 112(a). There are, however, six federal district court decisions discussing the question.

In *Dedham Water Company v. Cumberland Farms Dairy, Inc.,* 588 F.Supp. 515 (D.Mass.1983), the court held that the notice requirement of § 112(a), like that of 33 U.S.C. § 1365(b) of the Clean Water Act, is jurisdictional and absent "substantial compliance" or filing of an amended complaint alleging compliance with the notice requirement, an action would be dismissed. *Id.* at 517.

In *United States v. Allied Chemical Corp.,* 587 F.Supp. 1205 (N.D.Cal.1984), the court held that failure to allege compliance with § 112(a) results in failure to state a claim under CERCLA. *Id.* at 1207.

Finally, in *Bulk Distribution Centers, Inc. v. Monsanto Company,* 589 F.Supp. 1437 (S.D.Fla.1984), the Court held that compliance with § 112(a) is a condition precedent to a cost recovery action brought under § 107. *Id.* at 1438.

In contrast, in *State of New York v. G.E.,* 592 F.Supp. 291 (N.D.N.Y.1984), the court held that the notice provision in § 112(a) applies only to actions in which a claim is made against the Fund created by CERCLA; in the alternative, the court stated that notice requirement is not jurisdictional. *Id.* at 301.

In *United States v. Conservation Chemical Co.,* 619 F.Supp. 162 (W.D.Mo.1985), the court held that § 107 claims are unfettered by § 112 restrictions and that § 112 applies only when the Government is making a claim against the Fund. *Id.* at 210–11. The court acknowledged that its decision was "against the weight of caselaw authority." *Id.* at 211.

Finally, in *State of Colorado v. Asarco, Inc.,* 616 F.Supp. 822 (D.Colo.1985), the court followed the *G.E.* case in holding that § 112(a) does not apply to actions brought under § 107. *Id.* at 824–25. In so holding, the court stated:

I acknowledge that this interpretation of § 112(a) does not harmonize completely with the language of that subsection which states,

In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor, or other person or to present the claim to the Fund for payment.

It is puzzling that Congress included the emphasized language, for it does suggest that a claim letter must precede every court action. Perhaps the phrase was intended to signify that a claimant still retains the option to sue under § 107 after presenting the claim letter.

*Id.* at 826.

■ The foregoing review of the caselaw indicates the difficulty courts have had

on the present issue. After wrestling with the matter, the Court feels most persuaded by, and will adopt, the reasoning and result in the *Dedham* line of cases. That is, this Court holds that the sixty-day notice requirement is a jurisdiction prerequisite to a CERCLA action. In the alternative, the Court rules that plaintiff's complaint, by failing to allege compliance with § 112(a), fails to state a claim upon which relief may be granted.

The Court believes that the sixty-day notice requirement, as an integral part of CERCLA, must apply to actions brought under § 107. As the court stated in *Bulk Distribution:*

> [D]eclaring section 9607(a) completely independent of CERCLA's other provisions is inefficient and costly because it permits parties to take unilateral actions when a joint effort may have been possible had the parties attempted to settle their differences before undertaking a response.

589 F.Supp. at 1449. The Court believes that the plain language of the statute, specifically §§ 101(4), 107 and 112, supports the conclusion that the notice requirement is applicable to actions brought under § 107.

The Court also notes that in this case, unlike the *Dedham* and *Allied Chemical* cases, there is no substantial compliance or possibility of alleging compliance through amended pleadings. The notice of claim was *mailed* on December 12, 1983, the same day suit was filed and presumably was received by the defendants not only after the suit was commenced, but also beyond the three-year statute of limitations in § 112(d), which expired, as already held, on December 12, 1983. Thus, amending the complaint would be futile in this action. For this reason, the Court does not reach the question of what is entailed by "substantial compliance" or whether substantial compliance would satisfy § 112(a).

Because of the foregoing ruling, the Court does not reach the other grounds asserted by defendants for granting summary judgment on plaintiff's CERCLA claims.

■ Having determined that summary judgment must be granted on plaintiff's CERCLA claims, the Court turns next to plaintiff's pendent state law causes of action. It is the Court's determination the summary judgment should also be granted on these causes of action because they have no independent jurisdictional basis. The Court realizes that it has the discretion to dismiss or retain these pendent claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the issues are of unique concern to the State of Idaho and because plaintiff will suffer no prejudice by having to bring suit in state court, the Court will decline to exercise its pendent jurisdiction over these claims. If, as alleged, the nuisance is a continuing one, plaintiff will not be barred by the statute of limitations upon refiling its action in the state court. If the nuisance is a permanent one, the present causes of action are time-barred regardless of whether suit is maintained in this Court or in state court. Thus, the Court will grant summary judgment on plaintiff's state law causes of action.

As a concluding remark, the Court voices its disapproval of the tactics employed by the State of Idaho in the circumstances leading up to, and including the filing of this lawsuit. The record clearly demonstrates that the defendants made conscientious and good-faith efforts to comply with existing federal and state laws, to remedy the serious past degradation of the environment caused by others, and to minimize or prevent further environmental damage resulting from their own operations. Defendants obtained a state compliance order and two federal NPDES permits authorizing their activities at the Blackbird Mine. Thorough environmental assessment and environmental impact statements were prepared and drafted by the appropriate state and federal agencies. The State of Idaho was fully aware of and involved in the above matters. The Court notes that the State of Idaho has known of the environmental problems at the Blackbird Mine area for over two decades. Defendants have spent over $3 million in remedial mea-

sures largely intended to alleviate past damage caused by others. The defendants currently maintain and operate a $1.5 million water treatment facility at the site. The State's response to all of the above was to sue the defendants for $25 million. The Court feels that the State's eleventh hour decision to sue combined not only bad timing but also poor judgment.

## JUDGMENT

In accordance with the views expressed in the memorandum decision filed herewith,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendants' motions to dismiss and for summary judgment be, and the same are hereby, GRANTED, and summary judgment is granted as to all plaintiff's claims.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff take nothing by reason of its complaint and that the complaint and action be, and they are hereby, DISMISSED.