**STATE OF IDAHO, Plaintiff–Appellee,**

v.

**The HANNA MINING COMPANY; Noranda Mines Limited; Noranda Exploration, Inc., Defendants–Appellants.**

No. 88–3760.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 28, 1989.

Decided Aug. 10, 1989.

Anthony O. Garvin and R. Christopher Locke, Landels, Ripley & Diamond, San Francisco, Cal., for defendants-appellants.

Merrilee Caldwell, Deputy Atty. Gen., Natural Resources Div., Boise, for plaintiff-appellee.

Charles J. Sheehan, Dept. of Justice, Washington, D.C., for amicus curiae, U.S.

Atonette B. Cordero, Deputy Atty. Gen., Los Angeles, Cal., for amici curiae, State of Cal. and State of N.Y.

Margaret J. Livingston, Asst. Atty. Gen., Denver, Colo., for amicus curiae, State of Colo.

Before FARRIS, NOONAN and LEAVY, Circuit Judges.

FARRIS, Circuit Judge:

Idaho seeks recovery for natural resource damages under the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607. The district court ruled that the environmental impact statement exception of § 9607(f), which states that no liability shall be imposed if the damages "were specifically identified as an irreversible and irretrievable commitment of natural resources in an environmental impact statement," did not apply. The district court based its decision on the failure of the EIS to incorporate the exact language in the statute, and certified that issue for interlocutory appeal.

The district court narrowly defined the issue it certified for appeal as whether the specific terms "irreversible" and "irretrievable" must be used in the EIS in order for the EIS exception of § 9607(f) to apply.

Idaho and amici raise an additional issue. They argue that the EIS defense of § 9607(f) should not apply to damages that arise from activities which occurred prior to issuance of the EIS. We affirm on this alternate ground.

BACKGROUND

A. *Mining Operations*

The State of Idaho filed suit in December 1983 against Hanna Mining Co., Noranda Mines, Inc., Noranda Exploration, Inc., and Howmet Turbine Component Corp.,[1] for injunctive relief and damages. Idaho alleged that mining wastes, produced by the operation of the Blackbird Mine, approximately 21 miles west of Salmon, Idaho, in Lemhi County, contaminated ground and surface waters and damaged aquatic life and wildlife in the area.

Mineral deposits were discovered at the mine site in 1893. Various companies mined and milled cobalt and copper sulfides at the Blackbird Mine from 1917 to 1967. Open pit mining at the site left approximately 3.8 million tons of waste rock deposited in the headwaters of the Blackbird and Bucktail Creeks. Approximately one million tons of waste rock were removed during underground mining operations and deposited in the drainage of Blackbird, Meadow, and Bucktail Creeks. Until the 1950's, ore tailings were disposed of throughout the Blackbird Creek drainage system, including direct deposits into the creek. In 1950, a tailings dam was constructed to collect the tailings that washed downstream. The dam currently contains approximately two million tons of tailings. Drainage from the tailings contains acidic concentrations of copper, cobalt, and iron.

In 1967, Hanna acquired the Blackbird Mine and several surrounding properties, but conducted no commercial mining activities. In 1980, Hanna transferred its interest in the properties to a limited partnership composed of Noranda as the general partner and Hanna as the limited partner. Noranda conducted assessment activities in the area between 1979 and 1982, and removed approximately 2500 tons of ore from the mine as part of a pilot project to determine the feasibility of operating the mine.

Noranda obtained various permits as part of its pilot project. In September 1980, Noranda and Idaho entered into a compliance schedule order for operation of the mine. EPA then issued a National Pollution Discharge Elimination System permit to Noranda. In accordance with the compliance order and NPDES permit, Noranda constructed a $1.5 million waste water treatment plant at Blackbird Mine for the treatment of drainage from the mine. Following preparation of an environmental

1. Howmet was voluntarily dismissed by Idaho   for lack of jurisdiction.

assessment report, the U.S. Forest Service issued a use permit to Noranda. The Forest Service also approved Noranda's proposal for full-scale operation of the mine in February 1982, following issuance of an Environmental Impact Statement. Noranda ceased all activities at the mine in 1982 and never undertook full-scale operation of the mine. No further activities have been conducted at the mine, although Noranda continues to operate the waste water treatment plant in compliance with its permit.

### B. *Procedural History*

Idaho alleged four causes of action in its December 1983 complaint: strict liability under CERCLA; strict liability under the common law theory of abnormally dangerous activity; negligent creation of a continuing public nuisance; and negligent maintenance of a continuing public nuisance. In March 1985, Hanna and Noranda filed motions for summary judgment on a variety of grounds. The district court ruled on those motions in January 1986, dismissing Idaho's case for failure to comply with the 60 day notice requirements set out in § 9612(a). *See Idaho v. Howmet Turbine Component Corp.*, 627 F.Supp. 1274 (D.Idaho 1986). The court also ruled that Idaho's action was not barred by the three year statute of limitations of § 9612(d), dismissed the state claims for lack of pendent jurisdiction, and reserved ruling on the remaining issues.

We 1) reversed the district court's ruling on the 60 day notice requirement, holding that the requirement did not apply to causes of action against private parties, 2) affirmed the district court's ruling that the limitations period of § 9612(d) did not bar the Idaho CERCLA claim, and 3) reinstated the pendent state law claims. *See Idaho v. Howmet Turbine Component Corp.*, 814 F.2d 1376 (9th Cir.1987). Hanna and Noranda then brought a motion for summary judgment based on a number of contentions, including the claim that § 9607(f) barred the state's action for natural resources damages because the damages claimed by the state had been identified in an EIS and an Environmental Assessment. The district court ruled that the EIS excep-

tion of § 9607 did not apply, because the specific words "irreversible" and "irretrievable" were not used in the EIS. *See Idaho v. Hanna Mining Co.*, 699 F.Supp. 827 (D.Idaho 1987). The district court also rejected the other alleged defenses to CERCLA liability and the state law claims. Hanna and Noranda successfully asked the district court to certify the § 9607(f) issue for interlocutory appeal.

### C. *The Statute*

CERCLA was enacted "[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980). CERCLA generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed. 42 U.S.C. § 9607(a); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985). CERCLA imposes liability for damages to natural resources caused by the release of hazardous substances. 42 U.S.C. § 9607(a)(4)(C).

Natural resource damages include injury or loss of land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other resources belonging to, managed by, or otherwise controlled by the United States or state or local governments. 42 U.S.C. §§ 9601(6), 9601(16). Either the United States or the affected state may sue as trustee on behalf of the public to collect damages for injury to natural resources. 42 U.S.C. § 9607(f); *See generally* F. Cross, *Natural Resource Damages Valuation*, 42 Vand.L.Rev. 269, 273–75 (1989); *Developments in the Law—Toxic Waste Litigation*, 99 Harv.L.Rev. 1458, 1565–73 (1986); Note, *Theories of State Recovery Under CERCLA for Injuries to the Environment*, 24 Nat.Resources J. 1101 (1984).

Section 9607(f) provides that no liability for natural resource damages shall be imposed:

where the party sought to be charged has demonstrated that the damages to

natural resources complained of were specifically identified as an irreversible and irretrievable commitment of natural resources in an environmental impact statement, or other comparable environmental analysis, and the decision to grant a permit or license authorizes such commitment of natural resources, and the facility or project was otherwise operating within the terms of its permit or license. . . .

The meaning of this exception to liability for natural resource damages is the certified question on appeal.

## STANDARD OF REVIEW

The district court's interpretation of CERCLA is reviewed de novo. *Howmet,* 814 F.2d at 1378.

## DISCUSSION

### A. *Liability for Past Activities*

The district court chose to frame the issue on appeal as whether the specific terms "irreversible" and "irretrievable" must be recited in the EIS in order for the EIS exemption of § 9607(f) to apply. Idaho and all of the amici consider the primary issue to be whether the § 9607(f) EIS exception encompasses descriptions of past activities that create continuing harm. Hanna and Noranda respond that the past activities issue is beyond the scope of our inquiry, because it was not part of the interlocutory appeal. Under 28 U.S.C. § 1292(b), we may consider and resolve questions other than those regarded as controlling by the district court. *See Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 994 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). The appeal is from the entire order of the district court, not simply the question stated in the order. *Id.*

The district court's decision denying summary judgment may be affirmed on an alternate basis. *Golden Nugget, Inc. v. American Stock Exchange, Inc.,* 828 F.2d 586, 590 (9th Cir.1987). Whether to consider an alternate basis for decision is a prudential matter dependent on the adequacy of the record, including the briefing of the issues. *Id.* Because the parties have briefed for this appeal the question whether the EIS exception covers past activities,

we elect to affirm the district court's decision on an alternate basis.

■ The statute and legislative history do not contemplate excusing liability for past activities. Under the statute, liability is excused for damages arising from a newly permitted project. In this case, the damages arise from the pre–1967 mining activities. The permits were issued for a proposed reopening of the Blackbird mine that was never implemented. Although the permit also covers the waste water treatment plant, the intent of the EIS exception to § 9607(f) is to allow liability to be waived only for pollution caused by the facility, not the problems that existed before the facility. The releases that are excused are those "which will occur . . . if such project or action is carried out." S.Rep. No. 848, 96th Cong., 2d Sess. 88 (1980). Releases that will occur even if the project or action will not be carried out are beyond the scope of the statute.

Liability arising from past activities is not automatically extinguished by an authorization in an EIS for a new project. CERCLA explicitly imposes liability on current owners for hazardous substances dumped by previous owners. The EIS process is not a means for absolving an otherwise liable entity from responsibility for damages arising from past activities. Hanna and Noranda can point to no language in the EIS or EA that discusses CERCLA liability. Such a significant waiver of CERCLA liability is contrary to the intent of the statute. If Hanna and Noranda expected liability to be waived in return for construction of the treatment facility, a § 9622 settlement agreement would have been the proper means to accomplish that objective. The EIS exception does not apply to past or historic injury that has already occurred or is ongoing because of that historic conduct.

### B. *Environmental Impact Statement Language Necessary to Preclude CERCLA Liability*

Although we affirm on an alternate basis, we feel compelled to answer the question certified by the district court. We answer the question to avoid confusion and waste of judicial resources in this continu-

ing litigation. The district court found that the language of § 9607(f) required the EIS to specifically state that "an irreversible and irretrievable commitment of resources" was being made in order for the EIS exception to CERCLA liability to apply. The question raised by the district court is whether the phrase "specifically identified as an irreversible and irretrievable commitment of natural resources" requires the use of those precise words.

The starting point in construction of a statute is the language employed by Congress. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). In construing a statute, effect should be given, if possible, to every word Congress used. *Id.* CERCLA should be given a broad, liberal construction. *Mayor of Boonton v. Drew Chemical Corp.*, 621 F.Supp. 663, 666 (D.N.J.1985) (allowing cities to sue under CERCLA for damages to natural resources) (citing *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1122 (D.Minn.1982)). Exceptions to CERCLA liability should, therefore, be narrowly construed.

The terms "irreversible" and "irretrievable" are not defined in the statute. They are defined under the Forest Service regulations that address the National Environmental Policy Act's procedural requirements. 46 Fed.Reg. 57,013 (1981); 44 Fed. Reg. 44,732-33 (1979). The phrase "irreversible or irretrievable commitment of natural resources" originates in NEPA, which requires that environmental impact statements describe "any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." 42 U.S.C. § 4332(2)(C)(v).

The EIS exception of § 9607 does not overtly require a formulaic recitation of specific words. Nor does the legislative history of CERCLA manifest Congressional intent that the specific words must be used. The EIS exception was inserted in the legislation that ultimately became CERCLA during the Senate Environment and Public Works Committee mark-up of S. 1480, in 1980. The Senate Committee report explained that the provision was necessary because:

in certain instances Federal officials make decisions in which resource trade-offs must necessarily be made, and in such cases liability for resource damage under this legislation should be limited.... In such a case where the specific resource trade-offs are understood and anticipated and in issuing the permit for such releases the agency takes into account this knowledge and allows the trade-off, then no liability under this Act will accrue for resources damaged pursuant to those permitted releases."

S.Rep. No. 848, 96th Cong., 2d Sess. 88 (1980).

■ Legislative language and purpose can be satisfied by language other than the words "irreversible and irretrievable." Because those terms also are used in NEPA, the Forest Service regulations, and the exception itself, the best way to satisfy § 9607(f) is to use those specific terms. We hold, however, that because Congress did not require a formulaic recitation, § 9607(f) also may be satisfied by an agency finding that does not employ its specific terms, if otherwise clear and unambiguous. In so holding, we emphasize that interested parties should not be required to search through the hundreds of pages of an EIS in order to understand whether damages to natural resources have been specifically identified as an irreversible and irretrievable commitment of resources. The EIS should contain a clear and unambiguous statement, preferably employing the words of the statute and placed in the summary or other easily accessible section.

### C. *Attorney's Fees*

CERCLA does not state whether attorneys' fees may be awarded for actions for natural resources damages under 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f), nor do any cases appear to resolve the question. We elect to make no award of attorneys' fees.

AFFIRMED.