**RETIREMENT COMMUNITY DEVELOPERS, INC., et al.**

v.

**Allan A. MERINE, et al.**

**Civ. No. PN–87–2464.**

United States District Court, D. Maryland.

May 17, 1989.

Michael J. Goergen, Washington, D.C., Phillip R. Croessmann, Bassett & Morrison, Seattle, Wash., and John P. Van Beek, Greenbelt, Md., for plaintiffs.

Jerome H. Simonds, and Arthur H. Bill, Freedman, Levy, Kroll & Simonds, Washington, D.C., for defendants Allan A. Merine and Milton Elsberg, Trustee.

James H. Hulme, Donald B. Mitchell, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for defendants Anthony Campitelli, Nathan Brisker and Paul I. Burman.

## MEMORANDUM AND ORDER

NIEMEYER, District Judge.

This case presents the potentially far reaching issue whether a private cause of action to recover the costs of removing asbestos installed as part of the structure of buildings is created by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.

When plaintiffs undertook to renovate an apartment building in 1984 known as Fenwick House in Silver Spring, Maryland, they chose to remove asbestos insulation which was originally installed to fireproof structural members in the building as well as other building materials containing asbestos. The asbestos materials were incorporated into the building when it was originally constructed in 1966. They now seek to recover the costs of removal, damages and other expenses from former owners by virtue of CERCLA and related common law

theories. The defendants have filed motions to dismiss the complaint or for summary judgment in which they contend, advancing various arguments, that CERCLA does not extend to apply to the removal of asbestos when it is part of the structure of buildings. They argue that if the Court were to expand the application of the statute in the manner claimed by plaintiffs, hundreds of thousands of buildings constructed with asbestos, and more if residences were included, would become "hazardous waste sites" subject to cleanup responsibilities, a result not intended by Congress.

At some time before June 1966, defendants Anthony Campitelli, Nathan Brisker and Paul Burman began construction of Fenwick House, and in June 1966 they formed BBC Limited Partnership and transferred ownership of the building to the partnership. Defendant Alan Merine was one of 22 limited partners at the time, with a 3.125% interest in the partnership. Occupancy of the building began in September 1966.

On January 1, 1969, the general partners of BBC Limited Partnership sold their interest to Merine and to the defendant Milton Elsberg, and the partnership was renamed 1316 Fenwick Limited Partnership. Almost 15 years later on December 15, 1983, all general and limited partners sold all partnership interests to non-parties Ronald Paul, Steven Eisen and Mark Vogel. These non-parties then assigned the purchase agreement to the plaintiff Retirement Community Developers, which in June 1984 assigned its rights to plaintiffs Melvin Berman, Albert Schneider, and Thomas Devine, who were the principals in Retirement Community Developers. In June 1984 plaintiffs Berman, Schneider and Devine completed the purchase of all partnership interests of 1316 Fenwick Limited Partnership and became general partners.

Beginning in September 1984 the plaintiffs began renovating Fenwick House to convert it from an apartment building to a retirement community. When they discovered the presence of asbestos, they incurred direct expenses of $170,000 for the expense of removal. Approximately three years later they filed this suit against the defendants to recover the cost of removal and damages, for which they claim $15 million.

Pending before the Court is a motion to dismiss filed by Brisker, Burman, and Campitelli, a motion for summary judgment filed by Elsberg, and a motion to dismiss or in the alternative for summary judgment filed by Merine. For the following reasons, the Court will grant the motions and dismiss the complaint in its entirety.

Congress passed CERCLA in 1980 to facilitate the cleanup of hazardous waste discharges. *Exxon Corp. v. Hunt,* 475 U.S. 355, 358, 106 S.Ct. 1103, 1105, 89 L.Ed.2d 364 (1986). As the Second Circuit has observed, "CERCLA applies 'primarily to the cleanup of leaking inactive or abandoned sites and to emergency responses to spills.'" *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir. 1985) (quoting F. Anderson, D. Mandelker, & A. Tarlock, *Environmental Protection: Law and Policy* 568 (1984)).

While the statute authorizes the federal government to respond in several ways to hazardous waste sites and spills, the federal courts also have found that CERCLA authorizes a private cause of action under 42 U.S.C. § 9607. *See, e.g., Walls v. Waste Resource Corp.,* 761 F.2d 311, 22 E.R.C. 1785 (6th Cir.1985); *Artesian Water Co. v. Government of New Castle County,* 605 F.Supp. 1348 (D.Del. 1985); *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283 (N.D.Cal. 1984). In order for a person to state a private claim under CERCLA, a plaintiff must allege that (1) the waste disposal site is a facility within the meaning of 42 U.S.C. § 9601(9); (2) a release or threatened release of a hazardous substance from the facility has occurred, *id.* § 9607(a)(4); and (3) the release or threatened release has caused the plaintiff to incur response costs that are consistent with the national contingency plan, *id.* § 9607(a)(4) & (a)(4)(B). *See Shore Realty Corp.,* 759 F.2d at 1043.

In addition, a CERCLA defendant must fall within one of the following four classes

of persons: (1) the owner and operator of a vessel or a facility; (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person who by contract, agreement, or otherwise arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substance for transport to disposal or treatment facilities, incineration vessels or sites selected by such person. 42 U.S.C. § 9607(a)(1)–(4).

The parties have filed numerous memoranda of law disputing whether or not plaintiffs' causes of action state claims permitted by CERCLA and whether or not the defendants are proper parties. The Court need not reach all of these issues, however, because it concludes that Congress simply did not intend for CERCLA coverage to extend to the recovery of costs for the removal of asbestos installed in the construction of buildings.

It is undisputed that CERCLA presents difficult questions of interpretation. As the Third Circuit recently observed, "CERCLA is not a paradigm of clarity or precision. It has been criticized frequently for inartful drafting and numerous ambiguities attributable to its precipitous passage." *Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 648 (3d Cir.1988). Because the statute was passed in the waning days of the Carter Administration, it did not receive careful study by a committee. *See* Grad, *A Legislative History of the Comprehensive Environmental Response, Compensation and Liability ("Superfund") Act of 1980*, 8 Colum.J.Envtl.L. 1 (1982).

In 1986, Congress attempted to clarify CERCLA with the Superfund Amendments and Reauthorization Act of 1986, P.L. 99–499, 100 Stat. 1613 ("SARA"). Through SARA Congress added the following language to the CERCLA section entitled "Response authorities":

(3) Limitations on response

The President shall not provide for a removal or remedial action under this section in response to a release or threat of release—

(B) from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures....

42 U.S.C. § 9604(a)(3)(B). In the very next section, an exception is stated to this prohibition:

(4) Exception to limitations

Notwithstanding paragraph (3) of this section, to the extent authorized by this section, the President may respond to any release or threat of release if in the President's discretion, it constitutes a public health or environmental emergency and no other person with the authority and capability to respond to the emergency will do so in a timely manner.

*Id.* § 9604(a)(4). While the language of § 9604(a)(3) would appear to limit only responses by the President to releases that are part of building structures, the legislative history indicates that Congress intended for private persons to be limited also in responding to such releases.

The language of § 9604(a)(3) originated in section § 112(b) of Senate Bill S. 51 in 1985. The report accompanying that bill states the following:

SCOPE OF PROGRAM

SUMMARY

This section amends section 104 (response authorities) to clarify that the President should give primary attention to releases which may present a public health threat and that the President has the discretion to decide when responsible parties are authorized to conduct response in lieu of Fund-financed response. It also makes more explicit the fact that certain circumstances which may present genuine threats to human health, welfare

or the environment *are not within the scope of CERCLA.*

## DISCUSSION

\* \* \* \* \* \*

Clarifying the program's scope

CERCLA response authorities are extremely broad, but there are nevertheless situations, some of which may be life-threatening, which *are not within the law's scope.* The Agency has encountered some difficulties, primary political, in restraining CERCLA responses *to the scope of the law.* For this reason, S. 51 proposes to make more explicit certain areas *which the law does not cover.* Specifically, S. 51 makes more clear the *exclusion from remedial or removal action* of a release or a threat of a release:

\* \* \* \* \* \*

—from products which are part of the structure of, and result in exposure within a facility ...

\* \* \* \* \* \*

The Environmental Protection Agency has received requests to take removal or remedial action in situations where the contamination was from building materials used in the structure and was creating an indoor hazard. *This section would clarify that such situations are not subject to remedial or removal action.*

S.Rep. No. 11, 99th Cong., 1st Sess. 15–17 (1985) (emphasis added).

A provision limiting responses to releases in buildings similar to that in S. 51 appeared in § 117 of H.R. 2817, a bill passed by the House of Representatives on December 10, 1985. *See* Cooke, *The Law of Hazardous Waste—Management, Cleanup, Liability and Litigation,* § 12.04[4][e] at 12–68 (1988); *see also* H.R. Rep. No. 253, 99th Cong., 1st Sess. 91, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2873. After the bills were resolved in conference, the committee report indicated without elaboration that the language from § 112(b) of S. 51 had been chosen by the committee to become part of the final legislation. *See* H.R.Rep. No. 962, 99th Cong., 2d Sess. (Joint Explanatory Statement of Conference Committee) 190, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3283. Since the precise language of § 112(b) of S. 51 ultimately became § 9604(a)(3), the Court considers Senate Report No. 11 accompanying S. 51 to be a persuasive indication of the legislative intent behind this section. As the report makes clear, § 9604(a)(3) was intended to be a limit on the substantive scope of CERCLA and not solely a limit on the President's authority under the statute.

 This conclusion is supported by the language of the national contingency plan ("NCP"), which is a detailed set of regulations required by CERCLA "to reflect and effectuate the responsibilities and powers created by [CERCLA]." 42 U.S.C. § 9605(a). CERCLA provides that response costs are not recoverable unless they are "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B).

The NCP states under the heading "Other party responses:"

(2) For purposes of cost recovery under § 107 of CERCLA ... a response action will be consistent with the NCP ... if the person taking the response action:

(i) Where the action is a removal action, acts in circumstances warranting removal and implements removal action *consistent with § 300.65.*

40 C.F.R. § 300.71(a)(2) (emphasis added).

Section 300.65 governs federal removal actions. Therefore, in order for a private party to conduct a removal action consistent with the NCP, the private party must follow the same rules that apply to government removal actions. Since the government clearly is not authorized to remove hazardous substances that are part of the structure of a building absent presidential approval, §§ 9604(a)(3)–(4), it follows that private parties generally cannot act consistent with the NCP and conduct such removal actions absent presidential approval. Or to state it differently, since private parties must conduct removal actions in a manner consistent with federal removal actions, pri-

vate parties generally cannot conduct removal actions involving hazardous substances that are part of a building structure absent presidential approval.

The Court's holding reflects its reluctance to extend CERCLA liability to the hundreds of thousands of buildings that were built with asbestos products during this century without specific authority from Congress to that effect. Defendants proffered that between 1900 and the 1970's one publication put the number of public and commercial buildings containing asbestos at 700,000. Pursuant to a recent study in Montgomery County, Maryland, over 75% of the public county buildings there were found to contain asbestos. The financial consequence of imposing liability for the removal of all of this asbestos would be inestimable and certainly astronomical, particularly if plaintiffs are correct that the removal from but one building entitles them to $15 million.

■ Since CERCLA applies not only to owners of facilities but also to generators and transporters of hazardous substances, plaintiff's interpretation of CERCLA could extend strict liability coverage to all individuals and businesses who manufactured, delivered, and installed asbestos over the past seventy or more years. Were this the case, CERCLA could conceivably hold liable for removal or remedial costs all persons who presently own houses or buildings with asbestos in them, all persons who ever installed asbestos, all persons who transported or delivered asbestos, and all manufacturers of asbestos. If Congress intended such a result, it could have said so clearly and specifically. To the contrary, the legislative history of SARA indicates that Congress specifically intended that CERCLA generally not apply to this type of action, although it is recognized that Congress' expression of intent could well have been more direct. The Court will not impose such broad liability with such far reaching consequences until Congress clearly shows its intent to dictate such a result.

This Court is not alone in dismissing this type of case brought under CERCLA. Two federal district courts have already concluded that CERCLA was not intended to allow for recovery of costs incurred through the removal of asbestos from buildings. *See 3550 Stevens Creek Associates v. Barclays Bank of California,* Civil No. C–87–20672–RPA (Unpublished Slip Op., N.D.Cal., Sept. 28, 1988) (Aguilar, J.) (no authority exists under CERCLA for recovery of costs for removing asbestos from apartment building); *Corp. of Mercer University v. National Gypsum Co.,* 24 E.R.C. 1953, 1960–61, 1986 WL 12447 (M.D. Ga.1986) (Congress did not intend CERCLA to apply for recovery of costs for asbestos removal from buildings).

For the reasons given the Court will dismiss the CERCLA-based claims in the complaint.

■ The state common law claims relating to tort liability arising out of the sale of real property are best left to the state courts when, as here, there remains no federal interest. The Court will therefore decline to invoke its discretion to exercise pendent jurisdiction over the remaining state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, it is hereby ORDERED this 17th day of May, 1989, by the United States District Court for the District of Maryland, that:

1. The motions to dismiss and for summary judgment are granted, and the amended complaint is dismissed; and

2. The Clerk is directed to mail a copy of this Memorandum and Order to all counsel of record.