Stanley BLACK, et al., Plaintiffs,

v.

CAREY CANADA, INC.,
et al., Defendants.

AIRPORT FREEWAY CENTER,
Plaintiff,

v.

CAREY CANADA, INC.,
et al., Defendants.

CALIFORNIA FEDERAL
BANK, Plaintiff,

v.

CAREY CANADA, INC., et al.,
Defendants. (Three Cases)

MUIR PARTNERS, et al., Plaintiffs,

v.

CAREY CANADA, INC.,
et al., Defendants.

5300 JOINT VENTURE, et al., Plaintiffs,

v.

CAREY CANADA, INC.,
et al., Defendants.

CAL–AMERICAN INCOME PROPERTY
FUND VI, Plaintiff,

v.

CAREY CANADA, INC.,
et al., Defendants.

Civ. A. Nos. S89–0470(G), S89–0468(G),
S89–0509(R), S89–0510(G), S89–0511(G),
S89–0465(G), S89–0466(G), S89–0464(G).

United States District Court,
S.D. Mississippi, S.D.

April 3, 1990.

Samuel M. Millette, Jr., Richard F. Scruggs, P.A., Pascagoula, Miss., Michael F. Brandis, Caren R. Neilsen, Gilbert L. Purcell, Sayre, Moreno, Purcell & Boucher, Los Angeles, Cal., for Stanley Black, Joyce Black and K Associates.

Douglas Gunn, Jackson, Miss., for GAF Corp.

Ronald D. Collins, Jackson, Miss., for Owens–Illinois.

Rhesa H. Barksdale, Jackson, Miss., for Eagle–Picher Ind.

Polly J. Kellar, James H. Crosby, Donald G. Beebe, Richard Crump, Mobile, Ala., for Owens–Corning Fiberglas.

Thomas D. McNeese, Steve Pittman, Columbia, Miss., for W. R. Grace.

Roy C. Williams, Pascagoula, Miss., Thomas B. Kenworthy, Philadelphia, Pa., for U.S. Gypsum.

## AMENDED MEMORANDUM OPINION

GEX, District Judge.

These causes come before this Court on the Motions to Dismiss of the Defendants, Kaiser Gypsum Co., Inc., Fibreboard Corporation, Pittsburgh–Corning Corporation, Owens–Illinois, Keene Corporation, Carey–Canada, Inc., and U.S. Mineral Products Co. (the named defendants). The Court has duly considered the record in these actions, in addition to the briefs of counsel, and being fully advised in the premises, concludes as follows:

### Facts

The plaintiffs in these actions are all residents[1] of the State of California. The

1. To give the plaintiffs the benefit of any doubt, the Court will assume that the plaintiffs are citizens of California.

plaintiffs' complaints allege that they have suffered damages as a result of the presence of asbestos-containing materials in their buildings. These buildings are not located in Mississippi. The plaintiffs also allege that the defendants manufactured, supplied, or distributed these materials. Further, the plaintiffs contend that the defendants have conducted business activities in Mississippi and have committed the torts of fraud and conspiracy in Mississippi. The defendants are not incorporated in Mississippi nor are they qualified to do business in Mississippi. The plaintiffs attempted service of process on the named defendants by mailing process to Mississippi's Secretary of State.

### Discussion

The defendants contend that there are several grounds for dismissal of these actions.

I. Personal Jurisdiction/Insufficiency of Service of Process.

■ The defendants contend that this Court lacks personal jurisdiction. A district court can exercise personal jurisdiction over a defendant if a state court could properly do so. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985) (citations omitted). The burden of establishing the district court's jurisdiction over the defendants is on the plaintiffs. *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir.1983).

A Mississippi court could have personal jurisdiction over these defendants if they were incorporated in Mississippi or were qualified to do business in Mississippi because both actions would make the defendants residents and, thus, citizens of Mississippi under this state's law. Obviously, a nonresident may sue a resident of Mississippi in a Mississippi court. Another method by which a Mississippi court could have personal jurisdiction over these nonresident defendants is if the plaintiffs were allowed to use Mississippi's long-arm statute to obtain service of process on the defendants.

The Mississippi long-arm statute provides in pertinent part as follows:

Any ... foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi ... to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceeding accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their or its agent, servant or employee.

Miss.Code Ann. § 13–3–57 (Supp.1989).

One basis for personal jurisdiction under the statute exists if a nonresident makes a contract with a resident to be performed in whole or in part in Mississippi. The plaintiffs do not attempt to argue personal jurisdiction based on this portion of the statute since they are not residents of Mississippi.

A second basis for personal jurisdiction over a nonresident exists if the nonresident has been doing business in Mississippi. The plaintiffs allege that the defendants have conducted extensive business activities in Mississippi. The defendants contend that any business activities conducted in Mississippi are irrelevant because a nonresident plaintiff may not use the "doing business" portion of the long-arm statute. Indeed, although the Mississippi Supreme Court has yet to rule on this precise issue, the Fifth Circuit and the district courts of this state have always held that a nonresident plaintiff may not use the "doing business" provision of the Mississippi long-arm statute. *See Smith v. DeWalt Products Corporation*, 743 F.2d 277, 279 (5th Cir. 1984); *Golden v. Cox Furniture Manufac-*

*turing Co., Inc.,* 683 F.2d 115, 117 (5th Cir.), reg'h denied, 685 F.2d 1385 (5th Cir. 1982); *Washington v. Norton Manufacturing, Inc.,* 588 F.2d 441, 444–45 (5th Cir. 1979), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Breeland v. Hide–A–Way Lake, Inc.,* 585 F.2d 716, 720 (5th Cir.1978) (including list of all previous cases); *Mills v. Dieco, Inc.,* 722 F.Supp. 296 (N.D.Miss.1989); *Shover v. Cordis Corporation, Inc.,* No. J89–0443(W) 1989 WL 303549 (S.D.Miss.1989); *Acker v. Armstrong World Industries, Inc.,* No. S89–0563(L), 1989 WL 268344 (S.D.Miss. December 1, 1989).

The final basis for using the Mississippi long-arm statute to gain personal jurisdiction over a nonresident defendant requires a tort to have been committed in whole, or in part, in Mississippi. The plaintiffs' complaints fail to allege that any part of the torts, committed against them, occurred in Mississippi. In their responses to the defendants' motions, the plaintiffs contend that the defendants committed conspiracy and fraud in Mississippi when the defendants sold their asbestos-containing products in Mississippi and misrepresented the consequences of exposure to such products. The Mississippi Supreme Court has interpreted the tort prong of the long-arm statute to mean that Mississippi will extend personal jurisdiction to a nonresident who commits any part of a tort in Mississippi. *See Smith v. Temco, Inc.,* 252 So.2d 212, 216 (Miss.1971) (injury occurred in Mississippi).

■ A cause of action for fraud (or deceit) is recognized in Mississippi and its elements are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent proximate injury.

*Whittington v. Whittington,* 535 So.2d 573, 585 (Miss.1988); *Breeland,* 585 F.2d 716. In other words, "fraud" involves a knowing and intentional misrepresentation of a material fact which causes a party to reasonably and justifiably rely thereon and suffer injuries as consequence. Simply put, it consists of the misrepresentations, the listener's reliance, and the damages. In the present cases, the plaintiffs allege that the defendants made misrepresentations about their products in Mississippi. For the defendants' alleged misrepresentations to have caused the plaintiffs' injuries, the plaintiffs would be required to show that they (or their predecessors) knew of the defendants' representations in Mississippi and justifiably and reasonably relied on those particular representations when they purchased the defendants' products. The plaintiffs fail to allege these essential facts but seem to allege that the defendants' misrepresentations have injured citizens of Mississippi. The plaintiffs may not sue on causes of action of others nor may they use torts allegedly committed against other parties as the basis for the plaintiffs' use of the Mississippi long-arm statute. Also, plaintiffs obviously were not injured (damaged) in Mississippi since their injuries were sustained where their property is located.

■ The Mississippi Supreme Court has held that a cause of action for "deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud." *Dunn v. Dent,* 169 Miss. 574, 153 So. 798 (1934).[2] It follows that a cause of action for fraud would also accrue *where* the sale was completed or *where* the fraud was completed. The defendants' alleged fraud was thus completed where the products were sold to the plaintiffs (or their prede-

---

**2.** The time of accrual is tolled until the date of discovery of the fraud if the defendant commits further acts of fraud which result in the concealment of the plaintiff's cause of action. *See Mississippi v. Furlong,* 60 Miss. 839, 844 (1883) (requires an affirmative act to the conceal fraud). The plaintiffs have not alleged that the defendants acted to conceal the plaintiffs' cause of action, nor could they. Even if the discovery rule applies, the plaintiffs should have discovered the falsity of plaintiffs'. representations about the safety of asbestos before 1980.

cessors) (i.e., where the buildings are located).

■ The plaintiffs also allege that the defendants conducted a nationwide conspiracy to misrepresent the effects of long-term exposure to asbestos products and that part of this conspiracy occurred in Mississippi. This state recognizes a cause of action for conspiracy and has held that it "is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss.1985); *N.A.A.C.P. v. Claiborne Hardware Co.,* 393 So.2d 1290, 1301 (Miss.1980). Similarly, other states require that the conspirators have conspired to commit an underlying tort before they will be liable for conspiracy. *See Hitchings v. Armstrong World Industries,* 1988 W.L. 68936 (D.M.J.) (asbestos conspiracy); *Hebron Public School District No. 13 v. U.S. Gypsum Co.,* 690 F.Supp. 866, 871 (D.N.D.1988) (same); *Town of Hooksett School District v. W. R. Grace & Co.,* 617 F.Supp. 126, 133 (D.N.H.1984) (same); *Carlson v. Armstrong World Industries,* 693 F.Supp. 1073, 1078 (S.D.Fla.1987) (same).

In these actions, the plaintiffs allege that the defendants' fraudulent misrepresentations comprise the necessary unlawful acts (or underlying torts). For part of this tort to have been committed in Mississippi, the plaintiffs would be required to show that these defendants conspired in Mississippi to defraud the plaintiffs but the plaintiffs have failed to even allege that acts were committed in Mississippi in furtherance of this conspiracy. Therefore, none of the elements of the plaintiffs' claims for fraud and conspiracy occurred in Mississippi, and their causes of action accrued where they were injured (i.e., where their buildings are located). This determination is consistent with the general rule that, for purposes of personal jurisdiction, "a tort occurs when and where the actual injury or accident takes place." *Cycles, LTD. v. W.J. Digby, Inc.,* 889 F.2d 612, 614 (5th Cir.1989); *Estate of Portnoy v. Cessna Aircraft Co.,* 730 F.2d 286, 290 (5th Cir.1984); *see also*

*Raymark Industries, Inc. v. Stemple,* 714 F.Supp. 460, 465 (D.Kan.1988) (fraud cause of action accrues where injury occurs); *Baldwin v. Celotex Corp.,* 1986 WL 13299 (E.D.Pa.1988) (conspiracy claims accrued where "asbestos was delivered to and installed").

■ Also, since the plaintiffs' causes of action for fraud and conspiracy accrued when, as well as where, the sale of the defendants' products was completed, their causes of action accrued no later than the 1970's.[3] Until the long-arm statute was amended in 1980, a nonresident plaintiff could not use its provisions for service on nonresidents. *See Thompson v. Chrysler Motors Corporation,* 755 F.2d 1162, 1168 n. 5 (5th Cir.1985). Because the plaintiffs' claims for fraud and conspiracy accrued prior to 1980, they may not use the tort prong of the long-arm statute. *See Thompson,* 755 F.2d at 1168 n. 5 ("because the subject accident occurred after the effective date of the amendment, Nash [a nonresident] can properly use the Mississippi long-arm statute"); *Casper v. Allred,* 592 F.Supp. 376, 379 (N.D.Miss.1984) (dismissal warranted because accident occurred prior to effective date of amended long-arm statute); *Myrick v. Armstrong Cork Co.,* slip op. at 2–3 (S.D.Miss. January 13, 1981) (nonresident asbestos plaintiff not allowed to use Mississippi long-arm statute because his exposure occurred prior to 1980 amendment to statute). Therefore, even if the defendants committed fraud or conspiracy in Mississippi, they did so before 1980 and that would prevent the plaintiffs' use of the long-arm statute. ·

■ Furthermore, this Court realizes the absurd consequences that would result from its adoption of the plaintiffs' contentions. All manufacturers who have committed mass torts would be subject to service of process under the tort provisions of the Mississippi long-arm statute, subject only to due process restrictions. But the Mississippi Supreme Court has never interpreted the long-arm statute this broadly.

---

**3.** The sale of asbestos-containing products was   prohibited in the 1970's.

*See Cycles, LTD.*, 889 F.2d at 616–17. Under the plaintiffs' interpretation, the tort provision would swallow all restrictions placed on the long-arm statute.

Finally, since the plaintiffs may not use the Mississippi long-arm statute to obtain service of process upon the defendants, the plaintiffs have no method by which they can obtain a legally valid service of process on the defendants.

## II. The CERCLA Claim.

■ The plaintiffs also brought a claim under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601–75, for the recovery of damages to their buildings that allegedly resulted from the presence of asbestos-containing materials in their buildings. The defendants have moved to dismiss this claim pursuant to Rule 12(b)(6) for failure to state a claim. The courts have consistently held that CERCLA simply does not provide for a private right of action for the presence of asbestos-containing materials in buildings (or for the removal of the same). *See First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862 (4th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434 (7th Cir.1988); *Retirement Community Developers, Inc. v. Merine*, 713 F.Supp. 153 (D.Md.1989); *Prudential Insurance Co. of America v. U.S. Gypsum*, 711 F.Supp. 1244 (D.N.J. 1989); *Knox v. A.C. & S., Inc.*, 690 F.Supp. 752 (S.D.Ind.1988); *3550 Stevens Creek Associates v. Barclays Bank of California*, No. C–87–20672–RPA (unpublished slip op., N.D.Cal., Sept. 28, 1988); *Corporation of Mercer University v. National Gypsum Co.*, 1986 W.L. 12447 (M.D.Ga.1986). Since the plaintiffs have failed to state a claim under CERCLA, their CERCLA causes of action should be dismissed. Further, this Court declines to invoke its discretion to exercise pendent jurisdiction over the plaintiffs' remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Merine*, 713 F.Supp. at 158.

## III. Subject Matter Jurisdiction.

The defendants also argue that these actions should be dismissed because this Court lacks subject matter jurisdiction. It is axiomatic that a plaintiff must aver the basis for invoking the jurisdiction of a federal district court. *See* Federal Rules of Civil Procedure Rule 8(a)(1). The plaintiffs have failed to specifically allege the basis for this Court's jurisdiction over the subject matter of these actions in either their complaints or their responses to these motions. In order to give the plaintiffs the benefit of doubt, the Court has reviewed the complaints and determined that there are two possible grounds for jurisdiction over these actions. The plaintiffs' complaint contains a cause of action which could have given this Court jurisdiction over the subject matter, but this Court determined that the plaintiffs failed to state a claim for relief under CERCLA, and this Court declined to exercise pendent jurisdiction over the plaintiffs' state-law claims. See *Part II, supra*.

■ The next possible grounds for jurisdiction is the "diversity of citizenship" of the parties. Before a plaintiff may invoke the diversity jurisdiction of a federal district court, there must be complete diversity of citizenship (i.e., no plaintiff and no defendant may be a citizen of the same state). *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Kaiser–Gypsum is a citizen of California (its principal place of business is located in California), and the plaintiffs allege they are all residents of California. Therefore, if this Court had personal jurisdiction over Kaiser–Gypsum, then it would not have subject matter jurisdiction over this action. Since this Court does not have personal jurisdiction over Kaiser–Gypsum, its citizenship may be disregarded. But this Court still lacks subject matter jurisdiction over these actions because the plaintiffs have failed to plead the location

of each corporate defendant's principal place of business, *see Joiner v. Diamond M. Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir.1982) (plaintiff "must set forth with specificity a corporate party's ... principal place of business"), and because they have also failed to allege the citizenship of each of the plaintiffs. *See* 28 U.S.C. § 1332 ("citizens of different states"); *Kurkiewicz v. Louisiana*, 560 F.Supp. 911 (M.D.La. 1983) (jurisdiction determined by citizenship, not residence); *Lefkowitz v. Lider*, 443 F.Supp. 352 (D.Mass.1978) (same); *James v. Daley & Lewis*, 406 F.Supp. 645 (D.Del.1976) (allegation of residency insufficient for diversity purposes). Because the plaintiffs have failed to establish grounds for invoking the subject matter jurisdiction of this Court, these actions must be dismissed.

### IV. Delayed Service.

The defendants contend that service upon them was defective because the plaintiffs failed to comply with Federal Rules of Civil Procedure 4(j). Rule 4(j) states:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule. Fed. R.Civ.P. 4.

Since "[o]nce the validity of service of process has been contested, the plaintiff 'must bear the burden of establishing its validity,'" the plaintiffs herein were required to show that the defendants had been timely served. *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir.1985) (quoting *Aetna Business Credit v. Universal Decor*, 635 F.2d 434, 435 (5th Cir.1981)).

The plaintiffs instituted these actions on June 27, 1989.[4] The plaintiffs attempted to serve the defendants pursuant to Federal Rules of Civil Procedure 4(c)(2)(C)(i) and Miss.Code Ann. § 13–3–57 (Supp.1989) (Mississippi's long-arm statute) since they mailed the appropriate forms for process to the Secretary of State of Mississippi on October 25, 1989. The Secretary of State's office actually received these forms on October 26, 1989 for most defendants but was unable to process them until sometime thereafter. Because the defendants were served under the state rule for service on a nonresident defendant pursuant to Federal Rules of Civil Procedure 4(e), 4(c)(2)(C)(i), and Miss.Code Ann. 13–3–57,[5] Mississippi law governs the validity of the service of process and, thus, governs the date that service is effected. *See American International Pictures, Inc. v. Morgan*, 371 F.Supp. 528 (N.D.Miss.1974). The Mississippi Supreme Court has held that "substituted service of process is complete when made upon the designated state official." *Ellis v. Milner*, 194 So.2d 232, 235 (Miss.1967). Therefore, even if the plaintiffs' service on the defendants was legally sufficient pursuant to the long-arm statute, then that service did not comply with Rule 4(j) because process was not mailed to the defendants until 120 days after the complaint was filed.[6] Rule 4(j) provides that a delay in service beyond 120 days will be excused if the plaintiffs can "show good cause" for the delay. Because the granting of an extension for good cause is not automatic, "the plaintiff must

---

**4.** Civil Action Numbers S89–0509(R), S89–0510(G), and S89–0511(G) were instituted on June 30, 1989.

**5.** Although these acknowledgement forms state that service was made pursuant to Rule 4(c)(2)(C)(ii), it is obvious that service was made pursuant to the Mississippi long-arm statute and Rule 4(c)(2)(C)(i) since the Secretary of State was served with process.

**6.** In S89–0509(R), S89–0510(G), and S89–0511(G), the plaintiffs mailed the service of process 117 days after the complaint was filed.

make 'an adequate showing of need and justification to the Court before an extension will be granted.'" *Picataci v. United States,* No. 89–4281, slip op. at 4 (5th Cir. Nov. 16, 1989) [890 F.2d 1162 (table)] (quoting 4A Wright and Miller, *Federal Practice and Procedure,* Section 1137, at 387 (2d ed. 1987)). The rule indicates that good cause "would appear to require *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules normally does not suffice, and some showing of 'good faith on the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified' is normally required." *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir. 1985) (emphasis in *Winters*) (quoting 4 Wright and Miller, *Federal Practice and Procedure,* Section 1165, at 480); *see Picataci v. United States, supra,* at 4–5 (inadvertence of counsel not good cause); *see also Kersh v. Derozier,* 851 F.2d 1509, 1512 (5th Cir.1988) (the excusable neglect standard is a "strict one"). Plaintiffs' reason for the delay was that they were awaiting the results of certain tests conducted to determine the identities of the manufacturers of the asbestos-containing products located in its building. The plaintiffs contend that this is a time-consuming process which required a delay in the service of process on the defendants. This Court is convinced that such a basis for the delay does not constitute "good cause" because the plaintiffs could have just as easily conducted this identification process before the complaint was filed. The plaintiffs' first attempt at service of process on these defendants began 120 days after the complaint had been filed (117 days after the complaint was filed in S89–0509(R), S89–0510(G), and S89–0511(G)). Such a conscious and intentional delay in service does not provide a basis for a good cause extension. *See Fimbres v. United States,* 833 F.2d 138, 139 (9th Cir.1987) (intentional failure to effect service does not constitute good cause).

In *Red Elk v. Stotts,* 111 F.R.D. 87 (D.Mont.1986), the plaintiff was in virtually the identical predicament. That court was confronted with a plaintiff who waited until 117 days after he filed his complaint to mail the proper service forms to the defendant. *Red Elk,* 111 F.R.D. at 88. The defendant returned the acknowledgement forms within the time allowed the defendant but after the 120 day period had elapsed. *Id.* In granting the defendants' motion to dismiss, the court held that "[p]laintiff put himself in the position of risk by attempting service at such a late date." *Id.* at 90. Similarly, plaintiffs herein have not shown good cause for their delay in serving the defendants.

Because "[t]his rule mandates dismissal upon a finding that service has not been made within the specified time period and that good cause to extend the time does not exist," *see Norlock,* 768 F.2d at 657, this Court must dismiss these defendants.

### Conclusion

After a full review of the defendants' motions to dismiss, this Court has found that it lacks personal jurisdiction over the named defendants and subject matter jurisdiction over the plaintiffs' claims against all of the defendants. The Court also finds that the plaintiffs have failed to state a claim under CERCLA and the Court has declined to exercise pendent jurisdiction over the plaintiffs' state-law claims.

A separate Order, in conformity with the foregoing Memorandum Opinion, shall issue.