**3550 STEVENS CREEK ASSOCIATES, a Limited Partnership, Plaintiff–Appellant,**

v.

**BARCLAYS BANK OF CALIFORNIA, Defendant–Appellee.**

No. 88–15503.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1989.

Decided Oct. 3, 1990.

Bernard S. Greenfield and Marcia E. Gerston, Levy, Greenfield & Davidoff, San Jose, Cal., Kenneth A. Manaster, Los Altos, Cal., for plaintiff-appellant.

Timothy M. Flaherty, Jordan, Keeler & Seligman, San Francisco, Cal., for defendant-appellee.

Donald A. Carr, Anne S. Almy and David C. Shilton, U.S. Dept. of Justice, Washington, D.C., for amicus.

Before FARRIS, PREGERSON and RYMER, Circuit Judges.

RYMER, Circuit Judge:

3550 Stevens Creek Associates appeals the entry of judgment on the pleadings in its action for recovery of costs incurred in the voluntary removal of asbestos during remodeling of a commercial building against Barclays Bank of California, a predecessor-in-interest who owned the building at the time materials containing asbestos were installed. The United States as Amicus Curiae has filed a brief on behalf of Stevens Creek. The question on appeal is whether a private party may recover its response costs for clean-up of asbestos installed in a commercial building under section 107(a)(2)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607 (CERCLA). We hold that CERCLA does not permit such an action, and affirm.

I

In 1963, First Valley Corporation constructed a building, located at 3550 Stevens Creek Boulevard in San Jose, California, which contained asbestos insulation and fire retardants. In 1969, Barclays Bank acquired First Valley's assets. First Valley Corporation was dissolved in 1971, when Barclays acquired title to the property. Barclays sold the property to Stevens Creek in 1984. From 1984 through 1986, Stevens Creek remodeled the building, spending more than $100,000.00 in removing asbestos.

Stevens Creek brought this suit in district court under CERCLA, 42 U.S.C. §§ 9601–9657. It sought damages under section 107(a), 42 U.S.C. § 9607(a) for removal costs incurred. On Barclay's motion the district court granted judgment on the pleadings, holding that no authority exists for the award of such relief.

## II

A judgment on the pleadings is a decision on the merits which we review de novo. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988). Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c). The district court's interpretation of CERCLA is also reviewed de novo. *Idaho v. Hanna Mining Co.*, 882 F.2d 392, 395 (9th Cir.1989). We may affirm the district court's decision on any ground supported by the record. *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir.1987); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

## III

CERCLA was enacted to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980). It generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed. 42 U.S.C. § 9607(a); *Hanna*, 882 F.2d at 394. To promote these objectives, Congress created a private claim for certain "response costs" against "various types of persons who contributed to the dumping of hazardous waste at a site." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989) (citations omitted).

CERCLA employs a bifurcated mechanism to promote the cleanup of hazardous waste sites, hazardous spills, and releases of hazardous substances into the environment. Through the creation of Superfund, the federal government is empowered to respond to hazardous waste disposal. 42 U.S.C. §§ 9604–05, 9611–12. The statute also authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation. 42 U.S.C. § 9607(a)(1–4). *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 890–92 (9th Cir.1986); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986); *Walls v. Waste Resource Corp.*, 823 F.2d 977, 980–81 (6th Cir.1987); *Prudential Ins. Co. of America v. United States Gypsum*, 711 F.Supp. 1244, 1251 (D.N.J.1989); *United States v. Reilly Tar and Chem. Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982); H.R. Rep. No. 1016 at 22, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6125.

A private party may recover its "response costs"[1] for cleanup of hazardous wastes from a liable party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Section 107(a) provides:

(a) Notwithstanding any other provision of rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

---

1. Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), provides:

(25) The terms 'respond' or 'response' means [sic] remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto.

"Remove" and "removal" are defined at Section 101(23) of CERCLA, 42 U.S.C. § 9601(23):

(23) The terms 'remove' or 'removal' means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 104(b) of this Act, and any emergency assistance which may be provided under the Disaster Relief Act of 1974.

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which cause the incurrence of response costs, of hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 104(i).

■ There is no question that section 107(a)(2)(B) "expressly creates a private

cause of action." *Wickland Oil Terminals*, 792 F.2d at 890. *Accord Walls*, 823 F.2d at 980–81. To prevail in a private cost recovery action, a plaintiff must establish that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9);[2] (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a). *Ascon Properties*, 866 F.2d at 1152.

Stevens Creek argues that it has sufficiently pleaded all the allegations necessary for a claim under section 107, and that its cause of action is properly brought under the actual language of that section. In its view section 107 is not subject to any relevant limitations, particularly to a limitation on governmental responses to release from products which are part of the structure of a building set out in section 104(a)(3). Barclays contends that its predecessors-in-interest did not "dispose" of a hazardous substance within the meaning of section 107, and that the response limitations in section 104 are persuasive authority that removal of building materials containing asbestos is outside the scope of CERCLA.[3]

We agree with Stevens Creek that the limitation on governmental response in sec-

---

**2.** Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), provides:

(9) The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

**3.** Barclays also contends that it is not an "owner or operator" of the property, arguing that its acquisition of the Stevens Creek property resulted from a purchase of assets which does not result in successor liability under CERCLA. *See Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). Because this is a factual question and is irrelevant to our disposition of this appeal, we do not consider it.

tion 104 is not dispositive. At the same time, there is no authority recognizing a private right to relief for the voluntary removal of asbestos from a commercial building. The cases upon which Stevens Creek and the EPA rely concern the disposal or dumping of hazardous substances as waste, and not the removal of asbestos or any other building material from a commercial building.[4] Even those cases which do involve asbestos relate to its disposal as waste rather than its use as a building material,[5] and no federal court which has considered the placement of asbestos as part of the structure of a building has concluded that it falls within the scope of Section 107(a).[6]

## A

We therefore begin by considering the plain language of the statute. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). To be liable under Section 107(a)(2)(B), there must have been a "release" or "threatened release" of a hazardous substance, and the defendant must be a person "who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) and (4).

"Release" is defined in section 101(22) as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...."[7] The "environment" includes surface and ground waters and "ambient air within the United

---

**4.** *See, e.g., Walls,* 823 F.2d 977 (removal of waste dumping ground); *Dedham,* 805 F.2d at 1075 (removal of "high concentrations of volatile organic compounds" illegally discharged into wells); *Wickland Oil Terminals,* 792 F.2d at 889 (removal of "hazardous concentrations of various metals" deposited in ground on site of former smelting operation); *New York v. Shore Realty,* 759 F.2d 1032, 1037 (2d Cir.1985) (removal of "hazardous waste disposal site"); *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 285 (N.D.Cal.1984) (discharge of hazardous substances into pond by steel company); *New York v. General Elec. Co.,* 592 F.Supp. 291, 293 (N.D.N.Y.1984) (disposal of "used transformer oil" containing PCBs); *Reilly Tar & Chem.,* 546 F.Supp. at 1105 (D.Minn.1982) (chemical waste contamination of groundwater by refinery).

**5.** *See Smith Land,* 851 F.2d at 87–88 ("Clean-up of a hazardous waste site" consisting of "large waste pile" accumulated "in the course of manufacturing asbestos products"); *United States v. Metate Asbestos Corp.,* 584 F.Supp. 1143, 1145 (D.Ariz.1984) (removal of "asbestos mine and mill wastes").

**6.** *See First United Methodist Church v. United States Gypsum Co.,* 882 F.2d 862, 867–69 (4th Cir.1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *Retirement Community Developers, Inc. v. Merine,* 713 F.Supp. 153, 156–58 (D.Md.1989); *Prudential,* 711 F.Supp. at 1253–56; *Corporation of Mercer Univ. v. National Gypsum Co.,* No. 85–126–3–MAC (N.D.Ga. March 9, 1986), 24 Env't Rep. Cas.

(BNA) 1953. *Cf. United States v. Fleet Factors Corp.,* 724 F.Supp. 955 (S.D.Ga.1988) (denying defendants' motion for summary judgment in action by Environmental Protection Agency to recover response costs for removal of asbestos-containing material and barrels of hazardous chemicals), *aff'd,* 901 F.2d 1550 (11th Cir.1990).

**7.** Section 101(22) of CERCLA, 42 U.S.C. 9601(22), provides in full:

(22) The term 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant), but excludes (A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons, (B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine, (C) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954, if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act, or, for the purposes of section 104 of this title or any other response action, any release of source byproduct, or special nuclear material from any processing site designated under section 102(a)(1) or 302(a) of the Uranium Mill Tailings Radia-

**1360**

States."[8]  Other courts considering this language have concluded that the "environment" referred to in the statute "includes the atmosphere, external to the building," but not the air within a building. *See Prudential*, 711 F.Supp. at 1255 n. 3 (citing *First United Methodist Church*, 882 F.2d at 867 & n. 5); *Knox v. AC & S, Inc.*, 690 F.Supp. 752, 757 (S.D.Ind.1988); *Electric Power Bd. of Chattanooga v. Westinghouse Elec. Corp.*, 716 F.Supp. 1069, 1080–81 (E.D.Tenn.1988). *See also Covalt v. Carey Canada Inc.*, 860 F.2d 1434 (7th Cir.1988); *United States v. A & F Materials Co.*, 582 F.Supp. 842, 845 (S.D.Ill.1984).[9]

■ "Facility" is a "building [or] structure ... where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9).  Barclays does not contend that a structure built with asbestos

insulation and fire retardants is not a "facility" within the meaning of CERCLA.[10]

"Hazardous substance" is defined in section 101(14), 42 U.S.C. § 9601(14).[11]  That section, in turn, refers to both the Clean Water Act, 33 U.S.C. § 1317, and the Clean Air Act, 42 U.S.C. § 7412.  Asbestos is classified as a "toxic pollutant" under the Clean Water Act and a "hazardous air pollutant" under the Clean Air Act.  33 U.S.C. § 1317;  42 U.S.C. § 7412;  *see* 40 C.F.R. Part 122, App. D, Table V (1987);  40 C.F.R. § 401.15 (1987);  40 C.F.R. Part 61, Subpart M (1987).  It is also designated as a hazardous substance for purposes of sections 102 (authorizing Administrator to designate hazardous substances) and 105 (providing for the national contingency plan) of CERCLA.  *See* 40 C.F.R. § 302.4, Table 302.4 (1987).[12]  The district court found, and we assume, that asbestos is a "hazardous substance";  however that fact is insuf-

---

tion Control Act of 1978, and (D) the normal application of fertilizer.

**8.** Section 101(8) of CERCLA, 42 U.S.C. 9601(8), provides in full:

(8) The term 'environment' means (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Fishery Conservation and Management Act of 1976, and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

**9.** Although not contested in this proceeding, courts which have addressed this language have determined that the escape of asbestos fibers *within a building falls outside the intended ob-*jectives of CERCLA. *See First United Methodist Church*, 882 F.2d at 867 & n. 5; *Prudential*, 711 F.Supp. at 1255 n. 3.

**10.** In a sense it is more accurate to say that asbestos insulation and fire retardants *are* the building, than to suppose they have have "come to be located" *in* the building.  However, the term "facility" has been broadly construed by the courts, such that "in order to show that an area is a 'facility,' the plaintiff need only show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there." *Metate Asbestos*, 584 F.Supp. at 1148; *see also Shore Realty*, 759 F.2d at 1043 n. 15; *Knox*, 690 F.Supp. at 756; *United States v. Bliss*, 667 F.Supp. 1298, 1305 (E.D.Mo.1987); *General Elec. Co.*, 592 F.Supp. at 295.

**11.** Section 9601(14), 42 U.S.C. § 9601(14), defines "hazardous substance":

(14) The term 'hazardous substance' means (A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act, (B) any element, compound, mixture, solution, or substance designated pursuant to section 102 of this Act, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act.  The term does not include petroleum, including crude oil and any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under sub-paragraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).

**12.** *See also Prudential Ins. Co.*, 711 F.Supp. at 1252; *Knox*, 690 F.Supp. at 755; *Metate Asbestos*, 584 F.Supp. at 1146–48.  The statutes and regulations make no distinction between these waste forms of asbestos and asbestos in solid form employed as a building material.

ficient to establish that its placement as part of the structure of a building constitutes "disposal of any hazardous substance" under CERCLA.

"Disposal" is defined by reference to the Solid Waste Disposal Act.[13] SWDA section 1004 defines "disposal" as:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

"Solid waste" is "any garbage, refuse, sludge, ... and other discarded material...." 42 U.S.C. § 6903(27), and "hazardous waste" is that subset of "solid waste" which poses a particularly great threat to human health or the environment, *see* 42 U.S.C. § 6903(5). Regulations issued by the Environmental Protection Agency similarly define "solid waste" as "any discarded material" which is "abandoned, ... recycled, ... or inherently wastelike." 40

C.F.R. § 261.2(a). The terms do not include materials which are "used or reused as ingredients in an industrial process to make a product...." 40 C.F.R. § 261.2(e)(1)(i).

On its face "disposal" pertains to "solid waste or hazardous waste," not to building materials which are neither. There is no suggestion that Barclays or its predecessors-in-interest discarded asbestos insulation and fire retardants; rather they were used to construct the building. Nor can the construction of a building using these materials fit into "the discharge, deposit, injection, ... or placing into or on any land or water" specified in the definition. There is no question that the asbestos materials in this case were built into the structure, not placed "into or on any land or water." Finally, there is no indication that materials containing asbestos installed as part of the structure of a building, as here, are such that asbestos fibers "may enter the environment or be emitted into the air." Even when action is taken that makes the asbestos friable, the resulting hazard is within the building.

---

13. Section 101(29) of CERCLA, 42 U.S.C. § 9601(29), provides:

> (29) The terms 'disposal', 'hazardous waste', and 'treatment' shall have the meaning provided in section 1004 of the Solid Waste Disposal Act.

Section 1004 of the Solid Waste Disposal Act, 42 U.S.C. § 6903, provides, in pertinent part:

> (3) The term 'disposal' means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

> . . . . .

> (5) The term 'hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treat, stored, transported, or disposed of, or otherwise managed.
> * * * * * *
> (27) The term 'solid waste' means any garbage, refuse, sludge from a waste treatment

plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923 [42 U.S.C. § 2011 et seq.]).

> . . . . .

> (34) The term 'treatment', when used in connection with hazardous waste, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

Stevens Creek argues that the specific reference to "disposal of *hazardous substances*" in section 107 overrides the definition of "disposal" limited to "hazardous wastes" borrowed from the Solid Waste Disposal Act. It also argues that because the phrases "hazardous substance" and "hazardous waste" are used interchangeably, the definitions of "waste" are irrelevant.

This reasoning is unpersuasive for two reasons. First, Congress could have defined "disposal" for purposes of CERCLA any way it chose; it chose to import the meaning provided in SWDA. That meaning is clear. All CERCLA definitions, including for "disposal," are set forth in section 101 and apply to all subsequent sections, some of which also speak of "hazardous substances." No reason appears in the statutory scheme to give a term one meaning for one section but another for another. Second, the fact that "hazardous substance" and "hazardous waste" may be used interchangeably goes to show that asbestos in non-waste form, such as insulation, was not meant to be covered: "both the terms hazardous *substance* and hazardous *wastes* are used, and their use is often interchangeable, because in the context of CERCLA, hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." *Injuries And Damages From Hazardous Wastes—Analysis And Improvement Of Legal Remedies: A Report To Congress In Compliance With Section 301(e) of [CERCLA] By The "Superfund Section 301(e) Study Group"*, Part 1, p. 26.[14]

■ Stevens Creek points to no authority construing "disposal" as it suggests.

However courts in other circuits have construed "disposal" for purposes of section 107(a)(3)[15] as referring only to an affirmative act of discarding a substance as waste, and not to the productive use of the substance. *See, e.g. Prudential*, 711 F.Supp. at 1253–56 (sale of asbestos building materials is not "disposal" of asbestos under CERCLA); *Jersey City Redevelopment Auth. v. PPG Indus.*, 655 F.Supp. 1257, 1260–61 (D.C.N.J.1987), aff'd, 866 F.2d 1411 (3d Cir.1988) (transaction involving transfer of hazardous substance is not "disposal" if it involved the sale of a product); *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 654 (N.D.Ill.1988), aff'd, 861 F.2d 155 (7th Cir. 1988) (sale of hazardous substance for use in wood treatment process does not constitute arranging disposal or treatment of hazardous substance, even where process run-off containing that substance had been placed at the site); *United States v. Westinghouse Elec. Corp.*, 22 E.R.C. (BNA) 1230 (S.D.Ind.1983) (sale of product containing toxic chemical for use in manufacturing does not constitute "disposal"). Because the definition applicable to actions under § 107(a)(2) and (a)(3) is the same, and there is no meaningful difference for purposes of CERCLA between a party who sells or transports a product containing or composed of hazardous substances for a productive use, and a party who actually puts that product to its constructive use, we see no reason to adopt a different definition in this case.[16]

**B**

■ Stevens Creek argues that CERCLA is to be broadly construed and that

---

**14.** The interpretation of CERCLA given by the "distinguished panel of lawyers" who comprised the 301(e) Study Group has been accorded substantial weight by other federal courts. *See Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1437 (7th Cir.1988); *see also Electric Power Bd. of Chattanooga*, 716 F.Supp. at 1080 & n. 3.

**15.** Section 107(a)(3) makes liable

"any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous sub-

stances owned or possessed by such person, by any other party or entity, at any facility or incineration vessels owned or operated by another party or entity and containing such hazardous substances...."

**16.** Stevens Creek's contention that actions under section 107(a)(3) differ from 107(a)(2) actions in that they are essentially disguised products liability suits is unhelpful, because it fails to explain why one definition of "disposal" should apply in actions under section 107(a)(3), and another in actions under 107(a)(2).

private remedies were intended to supplement, indeed supplant, governmental response to environmental threats. We agree that the Act is to be given a broad interpretation to accomplish its remedial goals. *See First United Methodist Church*, 882 F.2d 862; *see also Wickland Oil Terminals v. Asarco*, 792 F.2d 887, 891, 892 (9th Cir.1986). However we must reject a construction that the statute on its face does not permit, and the legislative history does not support.

CERCLA was designed to deal with the problem of inactive and abandoned hazardous waste disposal sites. U.S.Code Cong. & Admin.News 1980, at 6119, 6125; *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040 (2d Cir.1985) (quoting F. Anderson, D. Mandelker, & A. Tarlock, *Environmental Protection: Law and Policy* 568 (1984)). Necessarily it was the product of many compromises. *Shore Realty*, 759 F.2d at 1040. Section 107 could have, but did not, explicitly provide for the problem of the release of asbestos fibers from materials that are part of the structure of a building.

The legislative history shows that Congress intended just what CERCLA provides on its face. *Id.*

CERCLA directly addresses the issue of removal of substances which are part of the structure of buildings in only one place: section 104(a)(3)(B) limits the authority of the President to respond "to a release or

threat of release ... from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures." [17] By its terms, section 104 is a limitation on governmental actions; section 104(a)(3)(B) refers to "the President" and applies to responses only "under this section." [18]

Stevens Creek argues that since section 104(a)(3)(B) limits only governmental authority to respond to the presence of asbestos in the structure of a building, by inference, Congress intended that private parties would be able to recover under section 107(a). By the same token, it contends, the exception to the limitation provided in section 104(a)(4) that permits the President to act only if "no other person" is able to respond to a release or threatened release makes sense only if private parties are permitted to respond to these situations even if the federal government usually cannot.

■ We disagree. Congress has effectively precluded private party response actions through its "disposal" requirement in sections 107(a)(2) and (4). Even apart from this, there is no basis for inferring Congress' intent to create such a far-reaching private cause of action under section 107(a).

The only discussion of asbestos removal in the legislative history of CERCLA occurred during consideration of the Super-

---

**17.** Section 104(a)(3)(B), 42 U.S.C. 9604(a)(3)(B), provides, in pertinent part:

> (3) Limitations on Response—The President shall not provide for a removal or remedial action under this section in response to a release or threat of release—

> . . . . .

> (B) from products which are part of the structure or, and result in exposure within, residential buildings or business or community structures;

> . . . . .

> (4) Exception to Limitations—Notwithstanding paragraph (3) of this subsection, to the extent authorized by this section, the President may respond to any release or threat of release if in the President's discretion, it constitutes a public health or environmental emergency and no other person with the authority and capability to respond to the emergency will do so in a timely manner.

**18.** Both Stevens Creek and Amicus argue that the district court erroneously concluded that section 104(a)(3)(B) is a limitation on private actions under section 107(a). While we agree that section 104(a)(3)(B) by its terms applies only to the President and not to private parties, we do not read the district court's order as holding to the contrary. The district court determined that "the provisions of CERCLA do not provide for the recovery of costs in this situation," then discussed section 104(a)(3)(B) before concluding that "it is unlikely that Congress would have intended to preclude the President from taking a specific action, while allowing private parties to respond by that precise action." We read the court as suggesting that the limitation in section 104(a) reinforces its determination that section 107 does not extend to Stevens Creek's claim.

fund Amendments and Reauthorization Act (SARA), Pub.L. No. 99–499, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 1613, which was enacted in 1986. Section 112(b) of Senate Bill S. 51 contained the language now codified as Section 104(a)(3)(B) of CERCLA. The Senate Report prior to adoption of the SARA amendments to CERCLA discussed the extent of remedial or removal actions under the Bill:

"CERCLA response authorities are extremely broad, but there are nevertheless situations, some of which may be lifethreatening, which are not within the law's scope. The [Environmental Protection] Agency has encountered some difficulties, primarily political, in restraining CERCLA responses to the scope of the law. For this reason, [the Senate Bill] proposes to make more explicit certain areas which the law does not cover.

Specifically, [the Bill] makes clear the exclusion from remedial or removal action of a release or a threat of a release ...—from products which are part of the structure of, and result in exposure within a facility.... The Environmental Protection Agency has received requests to take removal or remedial action in situations where the contamination was from building materials used in the structure and was creating an indoor hazard. This section would clarify that such situations are not subject to remedial or removal action."

S.Rep. No. 11, 99th Cong., 1st Sess. 16–17 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835.

A similar provision limiting response to releases of materials used in the structure of buildings appeared in § 117 of H.R. 2817, a bill passed by the House of Representatives on December 20, 1985. *See* Cooke, *The Law of Hazardous Waste— Management, Cleanup, Liability and Litigation* § 12.04[4][e] at 12–68 (1988); *see also* H.R.Rep. No. 253, 99th Cong., 1st Sess. 91, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2873. After the bills were resolved in conference, the Conference Report discussed the limitation in terms specific to the President and to Section 104:

Section 112(b) prohibits the President from undertaking a response action under section 104 in response to a release ... from products which are part of the structure of residential buildings or businesses or community structures which result in exposure in such structures.

2.Conf.Rep. No. 962, 99th Cong., 2d Sess. (Joint Explanatory Statement of Conference Committee) 190 (1986); *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276. As the committee report also indicated, the committee adopted the exact language of § 112(b) of Senate Bill S. 51, without indicating that it intended to modify the original meaning in any way. *Id.*

Whether or not Senate Report No. 11 is an authoritative guide to the legislative intent underlying this section,[19] the legisla-

---

**19.** *See First United Methodist Church,* 882 F.2d at 868–69 & n. 9, concluding that section 104(a)(3)(B) is a substantive limitation on the breadth of CERCLA itself. Given the fact that CERCLA provides that response costs are not recoverable unless they are "consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(B), and the national contingency plan provides that a response action will be consistent if the person taking it acts in circumstances warranting removal consistent with § 300.65, which governs federal removal actions, 40 C.F.R. § 300.71(a)(2), it may be argued that there is some relationship between private party and government removal actions.

The United States, appearing as Amicus Curiae, urges us to take the opposite view, and conclude that section 104(a) limits only the federal government's ability to respond.

Even though as a general matter, "[t]he interpretation of an agency charged with the administration of a statute is entitled to substantial deference, if it is a sensible reading of the statutory language, ... and if it is not inconsistent with the legislative history," *Lawrence Co. v. Lead–Deadwood School Dist.,* 469 U.S. 256, 262, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985), we feel no such obligation in this case. As counsel for Amicus conceded during argument, the EPA has not formulated an official interpretation of section 107(a)(2)(B) as it applies to the removal of asbestos from the structure of a commercial building. The litigation arguments of the United States in its amicus brief, which lists an EPA lawyer as "of counsel," are not an "agency interpretation" of CERCLA such as to invoke the customary rule of deference.

In any event we believe it is unnecessary for us to decide whether section 104(a)(3)(B) is a

tive history is devoid of evidence of a Congressional intent to authorize a private cause of action for the recovery of response costs for the removal of asbestos from a building. In the absence of clear evidence of Congress' intent to create a private cause of action, we decline to imply one.

To recognize a private cause of action under Section 107(a)(2) for the voluntary removal of asbestos from a commercial building would have substantial and far-reaching legal, financial, and practical consequences. As the Fourth Circuit has observed:

> [t]o extend CERCLA's strict liability scheme to all past and present owners of buildings containing asbestos as well as to all persons who manufactured, transported, and installed asbestos products into buildings, would be to shift literally billions of dollars of removal cost liability based on nothing more than an improvident interpretation of a statute that Congress never intended to apply in this context. Certainly, if Congress had intended for CERCLA to address the monumental asbestos problem, it would have said so more directly when it passed [the 1986 "Superfund" amendments to CERCLA].

*First United Methodist Church*, 882 F.2d at 869 (citation and footnote omitted). *Accord Retirement Community Developers v. Merine*, 713 F.Supp. 153, 158 (D.Md. 1989).

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I dissent. The majority's opinion is based on a numbing, highly technical analy-sis of CERCLA definitions and provisions. "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). Congress enacted CERCLA "to provide a comprehensive response to the problem of hazardous substance release." *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 890 (9th Cir.1986). The purposes underlying this remedial statute should not be frustrated by the narrow interpretations inflicted on it by the majority opinion.

CERCLA provides several complementary mechanisms to effectuate hazardous substance removal.[1] The legislation also addresses the problems of compensation and liability in the wake of a release or threatened release of a hazardous substance.[2] Private cost recovery actions for clean up costs are a central part of CERCLA.[3] The availability and independence of these causes of action are now clearly recognized by the courts. *See id.* at 892 ("private enforcement actions under section 107(a) ... [are] independent of governmental actions financed by Superfund").

Section 107(a)(2) remedies apply only to a narrow private class of property owners who may be held responsible for the effects of a hazardous substance they caused to be placed on their property and failed to remove when they later sold the property. As argued by the United States in its amicus brief, the government has an interest in encouraging private parties to respond to releases of hazardous substances, be-

limitation on private parties as well as the government. We simply consider it along with all other relevant legislative history.

1. The federal government may conduct its own removal of hazardous substances or remedial actions necessary for such removal by using money from the Superfund. 42 U.S.C. § 9604. In certain instances the federal government may compel the parties responsible for the release of hazardous substances to clean up the site where the hazardous substances are found. 42 U.S.C. § 9606.

2. Either the federal government or a private party may recover the costs of response action from parties determined to be liable under section 107 of the Act. 42 U.S.C. § 9607.

3. "[T]he liability provisions of section 107 are an essential part of the structure established by CERCLA because the resources of the Fund alone are simply insufficient to provide an adequate remedy to the national problem of hazardous waste disposal." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1082 (1st Cir.1986).

cause private cleanups conserve the resources of EPA and the Superfund, and enhance EPA's effort to deal with the massive problem of improper disposal of hazardous substances.[4]

I cannot agree that Congress "effectively precluded private party response actions through its 'disposal' requirement." Majority opinion at 12527.[5] The "disposal" requirement does *not* clearly show that Congress intended to preclude private party liability for installing the hazardous substance—asbestos—within private structures. Interpretation of the term "disposal" to include installation of asbestos insulation and fire retardants in private build-

ings lies at the heart of the issue of potential liability under 107(a)(2). Depending on the facts, the installation of asbestos in private structures could fall within the definition of "disposal" and thus result in potential liability under section 107(a)(2) for clean up cost recovery. Because the district court never addressed this issue, we should remand the matter with directions to determine whether the facts of this case satisfy the "disposal" requirement.

The widespread use of asbestos in private building structures presents an extensive problem for which there is no common law remedy.[6] Precisely because of the

4. "Asbestos is a known human carcinogen that causes lung cancer, mesothelioma (a cancer of the chest and abdominal lining) and is also linked to other cancers. It has been estimated that 3,300 to 12,000 cancer cases a year occur in the United States as a result of past exposure to asbestos; almost all of these cancer cases are fatal. In addition, asbestos causes asbestosis (a serious lung disorder). About 65,000 persons in the United States are estimated to be suffering from asbestosis today." 51 Fed.Reg. 3738 (1986) (introduction to proposed rule on ban of asbestos products).

Because of the health risks presented by the release of asbestos fibers into the environment, the EPA has for the first time used its authority under section 6 of the Toxic Substances Control Act to place a *comprehensive ban* on a dangerous substance. *See* 20 Env't Rep. (BNA) 534 (July 14, 1989) (reporting EPA Administrator William K. Reilly's remarks at a press conference announcing the ban) (emphasis added). Determining that "piecemeal control of the risks [presented by airborne asbestos fibers] is not satisfactory; only elimination of asbestos to the extent feasible will produce acceptable reduction of risks," 51 Fed.Reg. 3738, the EPA has issued a rule which will prohibit the manufacture and distribution of asbestos in this country for 94% of present asbestos product uses by 1996. 20 Env't Rep. (BNA) 534 (July 14, 1989); *see* 40 C.F.R. Part 763.

5. The majority bases its analysis on the questionable proposition that "disposal" refers only to the placement of "hazardous wastes," not of "hazardous substances." This proposition fails to take into account the very language of the statute which refers repeatedly to the "disposal of hazardous substances." *See* §§ 107(a)(2), (a)(3) and (a)(4). The specific reference in the section to hazardous substances overrides the borrowed Solid Waste Disposal Act's limited definition of disposal. *See* Hartigan, *Asbestos Abatement Cost Recovery Under the Comprehensive Environmental Response, Compensation, and Liability Act,* 14 Harv.Envtl.L.Rev. 253, 258–

60 (1990) (contending that recovery of costs for removal of asbestos from buildings properly fits within the plain language and congressional intent of CERCLA). Case law also tends to use the terms "hazardous waste" and "hazardous substance" interchangeably when referring to CERCLA requirements. *See New York v. General Elec. Co.,* 592 F.Supp. 291, 296 (N.D.N.Y.1984) ("[I]t appears that Congress sought to deal with every conceivable area where *hazardous substances* come to be located....") (emphasis added); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986) ("[A liberal] reading of the statute serves ... congressional purposes by preserving the limited resources of the Fund and by ensuring that liability will be apportioned among parties responsible for the release of *hazardous substances* whenever possible.") (emphasis added); *Cadillac Fairview/California v. Dow Chemical Co.,* 840 F.2d 691, 693 (9th Cir.1988) ("Section 107(a)(2)(B) expressly creates a private claim against any person who owned or operated a facility at the time hazardous substances were disposed of at the facility for recovery of necessary costs of responding to the *hazardous substances* incurred consistent with the national recovery plan.") (emphasis added).

6. Recovery for damages caused by asbestos in the private sector is uncertain. Where exposure to friable asbestos has caused *personal* injury, individual parties have been able to sue asbestos manufacturers under traditional tort theories. *See, e.g., Beshada v. Johns–Manville Prods. Corp.* 90 N.J. 191, 447 A.2d 539 (1982); *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). But tort litigation for *property* damages and economic loss due to asbestos installations is more problematic. Generally speaking, the problem of "rooting out the asbestos that is now an unwelcome resident in thousands of structures throughout the United States," W. Rogers, Environmental Law: Pes-

widespread nature of the problem, government Superfund resources are not sufficient to deal with these clean-up costs. Thus, without recognition of a statutory remedy of a private cause of action under section 107(a)(2), there will be no effective remedy for the damage and injury caused by the existence of asbestos in private structures.

Underlying the majority's refusal to recognize section 107(a)(2) private actions in the context of asbestos removal from private structures is the argument that there is no case law to support the action. Given that this is an issue of first impression in the circuits, and one not at all settled among the district courts, this argument carries little water. If recent cases are any example, neither the courts nor the litigants are clear about how to proceed when private structure asbestos clean up issues arise under CERCLA. Some of the cases are brought under common law tort and property theories, using CERCLA language as a guide to liability. *See, e.g., First United Methodist Church v. United States Gypsum Co.,* 882 F.2d 862 (4th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *Elec. Power Bd. v. Westinghouse Elec. Corp.,* 716 F.Supp. 1069 (E.D.Tenn.1988). Others merely announce a CERCLA private cause of action as one of several claims against a potentially liable defendant. *See, e.g., Mercer Univ. v. Nat'l Gypsum Co.,* 258 Ga. 365, 368 S.E.2d 732 (1988).

Finally, the majority's concern that a finding of private liability under section 107(a)(2) would cause far-reaching financial and practical problems is misplaced. The extensive use of asbestos materials in commercial properties has already had a "profound, continuing economic impact on the real estate industry." 19 Env't Rep. (BNA) 1154 (Oct. 7, 1988) (remarks of H.L. Van Varick, executive vice president of the American Savings Bank of New York City to Senate Environment and Public Works Subcommittee on Hazardous Wastes and Toxic Substances). "Asbestos is a deal kill-

er." 19 Env't Rep. (BNA) 1664 (Dec. 16, 1988) (remarks of Robert Andre of the Seattle law firm of Ogden, Ogden, Murphy & Wallace). Recognition of an effective, statutory remedy for dealing with asbestos clean-up costs in private structures could at least give the parties to a real estate transaction a tool for apportioning clean up responsibilities.

I believe section 107(a)(2) creates a private cause of action in certain situations for the recovery of clean up costs of asbestos installed in the structure of private buildings. The issue whether 3550 Stevens Creek Associates has satisfied the requirements of the section and can prevail in the private action should be remanded to the district court.

ticides and Toxic Substances § 6.8, at 460 (1988), does not fall within the classic tort pa-

rameters of culpable party and innocent victim.