LEVIN METALS CORP.,
et al., Plaintiffs,

v.

PARR–RICHMOND TERMINAL CO.,
a dissolved corporation, et al.,
Defendants.

PARR–RICHMOND TERMINAL CO.,
a dissolved corporation, et al.,
Counter-complainants,

v.

Richard LEVIN, Levin Metals,
et al., Counter-defendants.

LEVIN METALS CORP.,
et al., Plaintiffs,

v.

PARR–RICHMOND TERMINAL
CO., et al., Defendants.

Nos. C 84 6273 SC, C 84 6324
SC and C 85 4776 SC.

United States District Court,
N.D. California.

June 21, 1991.

## ORDER RE MONTROSE AND STAUFFER'S MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

### I. Introduction

Montrose Chemical Corporation of America ("Montrose") and Stauffer Chemical Company ("Stauffer"), defendants in these consolidated actions, move this court for partial summary judgment pursuant to Fed.R.Civ.P. 56 on the issue of their liability. Claims are filed against Montrose and Stauffer under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601, et seq. ("CERCLA") for costs associated with cleanup of real property located in Richmond, California ("the Heckathorn site").

Levin Enterprises and Levin Richmond Terminal Corporation ("Levin"), Parr Richmond Terminal Company and John Parr Cox ("PRTC"), and Fred Parr Cox ("Cox") filed oppositions to Montrose's motion. Prentiss Drug & Chemical Company joined Levin's opposition. Cox's opposition also opposes Stauffer's motion for summary judgment. The Sherwin–Williams Company, Mobay Corporation, Olin Corporation, and John Powell & Co., Inc. filed statements of non-opposition to Montrose and Stauffer's motions. Puregro Corporation filed a statement of non-opposition to Montrose's motion.

Montrose and Stauffer seek partial summary judgment on all CERCLA claims asserted against them, including claims by PRTC, Cox, the Sherwin–Williams Company, Stauffer, Olin Corporation, Shell Oil Company, Mobay Corporation, Heckathorn & Co., Chemwest, and Prentiss Drug & Chemical Company.

Levin alleges that Montrose "arranged for disposal" of hazardous substances owned by Montrose at the Heckathorn site by providing technical grade DDT to Heckathorn as part of an arrangement whereby Heckathorn formulated 75% DDT wettable powder to fulfill Montrose's contracts with government health agencies. Levin alleges that Montrose is liable for the cost of remediating the Heckathorn site because waste generation and improper disposal allegedly were "inherent" in the formulation process. Levin also alleges that Montrose is liable as an owner or operator of the Heckathorn site. Montrose moves for summary judgment on the grounds that its dealings with the Heckathorn site did not constitute arranging for the disposal of hazardous substances it owned or possessed, and that it was not an owner or operator of the Heckathorn facility.

Stauffer claims that the nature of its dealings with the Heckathorn site is similar to that of Montrose, and thus joins in Montrose's motion for summary judgment, adopting the arguments presented by Montrose. As a preliminary matter, the court finds the fact situations of Montrose and Stauffer sufficiently similar to rule on both motions together herein. In the discussion that follows, reference to "the chemical companies" will signify both Montrose and Stauffer.

### II. Background

This action involves the cleanup of hazardous wastes on property which is known as the "Heckathorn site." Plaintiffs and counter-defendants, Levin Metals Corporation and Levin–Richmond Terminal Corporation ("Levin"), purchased the Heckathorn site from Parr–Richmond in 1981 and subsequently discovered that the property was contaminated with hazardous substances. Levin then sued Parr–Richmond for fraud in state court. In turn, Parr–Richmond removed the action to this court on the ground that it stated a claim under CERCLA, and it subsequently filed this action for indemnity and contribution against Montrose, Stauffer and other parties.

Under virtually identical arrangements, Montrose and Stauffer paid the Heckathorn companies to grind and mix raw technical grade chemicals into pesticides according to each chemical company's specifications, and to deliver the finished pesti-

cides to the chemical company's customers. Tests conducted in the 1980's demonstrate that the Heckathorn site is contaminated with certain of these chemicals, including DDT, in excess of levels permitted by state and federal law.

For over twenty years, Montrose regularly used Heckathorn to prepare DDT insecticides it supplied under contract to the government. Under a similar agreement, Stauffer dealt with Heckathorn for many years. Montrose contracted with Heckathorn to grind technical grade DDT supplied by Montrose and blend it to produce 75% DDT wettable powder, containing 75% pure DDT by weight. Such contracts, common in the pesticide industry, were called "toll charge" or custom grinding agreements. As part of the toll charge arrangements, Montrose supplied excess technical grade DDT in an amount about 1% to 2% of the total.

Montrose shipped its technical grade DDT to Heckathorn to be processed into commercial grade DDT, packaged in a Montrose-labeled container, and delivered to a location designated by Montrose. The technical grade DDT, in the form of lumps, flakes or chips, was dumped from the original Montrose bags into a blender, where it was milled for subsequent grinding. High speed air mills then broke the material down into flour-like particles. The powder was combined with inert ingredients to produce the final product. The process produced layers of dust throughout the facility. The workers wore respirators and protective clothing. During the DDT grinding process, waste materials accumulated on the equipment, creating a residue which was washed out of the building and into the environment.

Levin now claims that it is entitled to recover its response costs of cleaning up the DDT released in the vicinity from Montrose and Stauffer as liable parties under Section 107(a) of CERCLA. Montrose and Stauffer deny any liability under this provision, and bring this motion for partial summary judgment.

### III. Summary Judgment Standard

■ Summary judgment is proper only when there is no genuine issue of material fact and when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. Discussion

The motion for summary judgment stems from allegations of liability against Montrose under two statutory provisions: CERCLA § 107(a)(2) and CERCLA § 107(a)(3). Because the court finds the issues remaining as to § 107(a)(3) sufficient to withstand a motion for summary judgment, it declines to address the arguments relating to § 107(a)(2).

CERCLA § 107(a)(3), or 42 U.S.C. § 9607(a)(3), imposes liability as a "generator" on "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another party or entity and containing such hazardous substances[.]"

■ The Ninth Circuit has emphasized the need to construe CERCLA's liability provisions broadly:

Because CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment [courts] are ... obligated to construe its provisions liberally to avoid the frustration of the beneficial legislated purposes ... "in the absence of a specific congressional intent otherwise."

*Wilshire Westwood Assoc. v. Atlantic Richfield*, 881 F.2d 801, 804 (9th Cir.1989) (citations omitted); *see also Wickland Oil Terminals v. Asarco*, 792 F.2d 887 (9th

Cir.1986). In keeping with that emphasis, this court will not impose limitations on the liability provisions absent indications of specific congressional intent to limit the statute's application.

■ It is undisputed that Montrose, and similarly Stauffer, supplied Heckathorn with an amount of DDT approximately 76% by weight of the amount of 75% DDT wettable powder to be produced. Levin alleges that, although there is no evidence of a written agreement, Montrose did "arrange" for disposal of part of the DDT in that it anticipated a loss of some of the DDT it provided to Heckathorn, which quantity of DDT Montrose considered a "spillage allowance." Thus, Levin claims, Montrose contemplated physical "losses" of DDT into the environment.

Deposition testimony on this claim is varied as to both Montrose and Stauffer. What exactly was contemplated during the negotiation of the formulating contracts between Montrose and Stauffer, and Heckathorn, is sufficiently unclear to defeat summary judgment alone. If it is shown at trial that the chemical companies affirmatively considered and provided for disposal of excess DDT by Heckathorn, the companies may be liable for the cleanup costs if they owned or possessed the DDT at the time. 42 U.S.C. § 9607(a)(3).

However, even if there were no issue as to whether the chemical companies contemplated and arranged for disposal of the released DDT, there would remain a genuine issue as to their arranger liability. At the very least, the chemical companies admit that they arranged by contract for *something*, namely the formulation of 75% DDT wettable powder. It is conceded by all parties that during the formulation process, DDT was discharged into the environment. At issue still is whether CERCLA arranger liability obtains if the chemical companies arranged for the formulation, and the formulation process resulted in disposal of hazardous substances, even if the chemical companies did not directly, affirmatively arrange for the disposal.[1]

Resolution of this issue turns on the factual questions of whether generation of hazardous waste was inherent in the process and whether the chemical companies retained ownership of the chemicals and, therefore, authority to control the work in process at all times. *See United States v. Aceto,* 872 F.2d 1373 (8th Cir. 1989). In *Aceto,* a case involving allegations almost identical to those in this case, the court held that pesticide manufacturers who hired formulators to transform the manufacturers' technical grade pesticides into commercial grade pesticides could be subject to arranger liability under CERCLA.

The *Aceto* court looked beyond the manufacturers' characterization of their arrangement with the formulator as solely one to produce a valuable product to see if the transaction in fact involved an arrangement for the disposal of a hazardous substance. *Id.* at 1381. The court based its ruling on its findings that generation of hazardous waste was inherent in the process, and that the manufacturers retained ownership of the chemicals and, therefore, authority to control the work in process at all times. *Id.* at 1381–1382. The ambiguous terms of the agreement between Montrose and Heckathorn, discussed above, also indicate that a genuine issue of material fact remains as to whether Montrose retained ownership of the DDT and/or had authority to control the disposal of excess DDT during the formulation process.[2]

■ Montrose argues that CERCLA arranger liability attaches only to arrangement for disposal of "waste," or hazardous substance, and that the DDT released into the environment at the Heckathorn site was not "waste" to Montrose because Montrose did not discard it. Montrose as-

---

1. Although Montrose argues the point, it seems clear to the court that disposal does not require intent. CERCLA defines "disposal" broadly, to include occurrences such as "spilling" and "leaking" that happen without intent. 42 U.S.C. § 9601(29).

2. Although this court need not reach the legal issue at this juncture, it notes that the Eighth Circuit has found it proper to impose CERCLA arranger liability on those who merely have authority to control the disposal of hazardous substances, even without ownership or possession. *Aceto,* 872 F.2d at 1382.

serts that Heckathorn, not Montrose, chose to convert useful DDT into a "waste" by discarding it. Accordingly, Montrose claims it cannot be held liable for arranging for disposal of a "waste."

Montrose also uses this reasoning to support its claim that Heckathorn, not Montrose, owned the resulting waste. Montrose states in its brief, "If Heckathorn chose [to] convert useful DDT into a 'waste' by discarding it, such as by flushing DDT out of the airmills into the canal, such DDT belonged to Heckathorn; it was not a 'waste' owned by Montrose."

The court finds this argument to be circular and contrary to the legislative intent behind CERCLA. While recognizing the duty of the court "to give effect, if possible, to every clause and word of the statute," *U.S. v. Menasche*, 348 U.S. 528, 538–539, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955), the court will not permit semantic games to obfuscate the true questions at issue and defeat the purposes of CERCLA. At issue here is not the DDT that was put to productive use, but rather the DDT that was released into the environment. The "disposal" alleged refers only to the *released* DDT.[3] The requisite affirmative act of discarding substance as waste is adequately alleged and supported; the issue raised is whether there is a nexus between the chemical companies' acts and the disposal sufficient to warrant imposing liability on the chemical companies. As discussed above, resolution of this issue will depend upon the facts of this case.

In assessing all the evidence presented, the court finds that a genuine issue of material fact remains as to whether the chemical companies arranged for the disposal of hazardous waste. The terms of the agreement between Montrose and Stauffer and the Heckathorn site are not sufficiently clear to resolve the questions that may determine whether the chemical

companies have CERCLA arranger liability in this action. Issues of fact also remain as to whether loss of DDT and disposal of the lost DDT are inherent aspects of the process of formulating 75% DDT wettable powder, and whether the chemical manufacturers owned, possessed, or controlled the process involving the released DDT. Accordingly, the motions of Montrose and Stauffer for partial summary judgment are DENIED.

IT IS SO ORDERED.

---

**3.** The only binding precedent Montrose cites in support of its argument, *3550 Stevens Creek Associates v. Barclays Bank,* 915 F.2d 1355 (9th Cir.1990), is inapposite to Montrose's action. That case involved an action for recovery of costs incurred in the voluntary removal of asbestos during remodeling of a commercial building against the bank that owned the build-

ing at the time the materials containing asbestos were installed. The court held that CERCLA "disposal" refers only to the affirmative act of discarding a substance as waste, and not to productive use of a substance. *Id.* at 1362. Here, the substance at issue is the DDT that was released into the environment, not DDT that was put to productive use.